**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| LEONARD JOHNSON, )<br><br>    ***Plaintiff***, )<br><br>v. )<br><br>TOWN OF PROSPER, TEXAS, )<br>PAUL BOOTHE, and )<br>DOUG KOWALSKI, )<br><br>    ***Defendants***. )<br> ) | Civil Action No. 4:23-cv-650<br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

**I.    Introduction**

1.    Both the First Amendment to the United States Constitution and the Texas Public Information Act (TPIA) guarantee the right of the people to ask questions of their government, without fear of retaliation or punishment for asking for information which could place the government in a bad or embarrassing light. *See* Tex. Gov't Code § 552.001(a); *Turner v. Lt. Driver*, 848 F.3d 678, 689 (5th Cir. 2017) (quoting *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 340 (2010)).

2.    Plaintiff Leonard Johnson exercised these rights by anonymously requesting public information from the Town of Prosper, Texas between October 14 and November 9, 2020. His actions triggered a nine-month criminal investigation into his identity which resulted in his unlawful arrest and prosecution.

3.    Defendants went to unprecedented lengths to investigate and punish Plaintiff for exercising his First Amendment right to ask questions of his government, and his statutory right

under the TPIA to request public government records. Rather than complying with these harmless requests and treating him the same as every other requestor of public information—as the TPIA mandates, Tex. Gov't Code §§ 552.221(a), 552.223—Defendants engaged in a concerted campaign to unmask and retaliate against Plaintiff for exercising his fundamental rights.

4.      Defendants' actions under color of law deprived Plaintiff of his clearly established rights under the First and Fourth Amendments to the Constitution. Plaintiff is entitled to actual and punitive damages, declaratory relief, and a recovery of attorneys' fees and costs.

## II.    Parties

5.      Plaintiff is a resident of Frisco, in the State of Texas.

6.      Defendant Town of Prosper is a home rule municipality organized under the laws of Texas. It may be served through its Town Secretary, Michelle Lewis Sirianni, at 250 W. First Street, Prosper, Texas 75078. It is subject to liability under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

7.      Defendant Paul Boothe was formerly employed by the Town of Prosper as a Lieutenant for the Prosper Police Department (PPD) and is a resident of Collin County, Texas. At all times with respect to the allegations herein, Defendant Boothe acted under color of state law, and is a person subject to liability under 42 U.S.C. § 1983. He is sued in his individual capacity.

8.      Defendant Doug Kowalski is the Chief of the Prosper Police Department and a resident of Collin County, Texas. He may be served at his principal place of business at 801 Safety Way, Prosper, Texas 75078. At all times, Defendant Kowalski acted under color of state law with respect to the allegations made herein, and is a person subject to liability under 42 U.S.C. § 1983. Defendant Kowalski is a duly appointed official of the Town of Prosper, administers and oversees the Prosper Police Department, and is a final policymaker for the Town of Prosper. Defendant

Kowalski is being sued in his individual capacity.

### III.    Jurisdiction and Venue

9.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights) and 28 U.S.C. §§ 2201, 2202 (declaratory judgment), as this action seeks redress for civil rights violations under 42 U.S.C. § 1983 and reasonable attorneys' fees under 42 U.S.C. § 1988.

10.      The Court has personal jurisdiction over Defendant Town of Prosper because it is a local government entity of the State of Texas and is located in this judicial district, and because the acts and omissions creating the Town of Prosper's liability occurred in this judicial district.

11.      The Court has personal jurisdiction over Defendants Boothe and Kowalski, because they reside in the State of Texas and this judicial district, and because the acts and omissions creating Defendants Boothe and Kowalski's liability occurred in this judicial district.

### IV.    Factual Allegations

**A. Plaintiff Learned about Organizational Changes at the Prosper Police Department that Affected his Wife, a Town of Prosper Employee.**

12.      Plaintiff has extensive knowledge of the TPIA and its federal equivalent, the Freedom of Information Act, which he has gained through filing public records requests over a period of years.

13.      In October 2020, he was employed as an application developer for AT&T. In his role and through his professional experience, Plaintiff is familiar with the technical details of electronic information storage and database systems.

14.      Plaintiff's wife, Roxanna Johnson, was a 911 communications manager and head of dispatch for the Town of Prosper, where she worked closely with the Prosper Police Department, including its command staff.

15.    Roxanna was promoted to this position in February of 2018. In her role as communications manager, she reported directly to PPD Chief Doug Kowalski. She built a reputation for maintaining strong relationships with staff, including Chief Kowalski, former head of Criminal Investigations and Internal Affairs Lt. Paul Boothe, and other emergency services command staff, including the chiefs of the Prosper Fire Department.

16.    October 2020 marked a period of transition for the Prosper Police Department. Two new positions at the rank of Lieutenant were created. The person elevated to one of these positions—Ron Castro—was assigned to lead the department's support services, which included the 911 dispatch services Roxanna oversaw. In other words, Chief Kowalski was no longer her direct supervisor; moving forward, Roxanna would report to Lt. Castro.

17.    This development troubled Roxanna. Lt. Castro had no experience with 911 dispatch—a fact which was relayed to her prior to Lt. Castro being promoted to his new role. The organizational changes within PPD at the time led Roxanna to feel concerned for her job security in the department, and her sense that PPD was a place that she could continue to grow and develop in her career. Though she was frustrated by this new state of affairs, she resolved to work through these challenges and make the best of the situation.

18.    As expected in any spousal relationship, during this time Roxanna confided in her husband about the concerns she was dealing with at work: her new supervisor Lt. Castro, her concerns over the circumstances of his promotion, his lack of experience, and its effect on her.

19.    Plaintiff is a protective husband. He listened to his wife's troubles at work and empathized with how these developments affected her, but he felt powerless to do anything. He wanted to do more than just be a sounding board, but also knew that involving himself in his wife's workplace dilemma would only further complicate an issue that was hers to navigate.

4

20.     Plaintiff instead came up with an alternative plan. He believed that public records would show that under PPD's current leadership, case clearance rates were shockingly low. By using the TPIA to obtain and publicize these records, Plaintiff believed that public attention could be drawn to PPD leadership's shortcomings, which might spur organizational and cultural change within the department, perhaps improving Roxanna's working environment.

21.     Plaintiff was trying to be a good husband. He decided to use the tools available to him to lawfully obtain records which he believed would cast a public light on how PPD leadership, in Plaintiff's opinion, had prioritized installing close personal friends of Chief Kowalski into positions of power—a decision which jeopardized the safety of the Prosper community by placing less qualified individuals in key roles that came with ample salaries.

22.     Plaintiff did not tell his wife Roxanna about his plan. Nor did Roxanna ever ask him for this assistance or disclose confidential information to him that was not known to the public or was not otherwise obtainable through the TPIA.

**B. Plaintiff Submits Lawful Requests for Public Information Using the Pseudonym "Geoff Hodges" in the Town's TPIA Request Forms.**

23.     On October 14, 2020, Plaintiff submitted two separate TPIA requests: one to the Town of Prosper and one to the Prosper Police Department. In doing so, Plaintiff followed the requirements of the TPIA, Prosper, and PPD for the submission of public information requests.

24.     In Plaintiff's request to the Town of Prosper, he asked for government information about several items: (1) an organizational chart for the Police Department; (2) a list of the Department's exempt personnel; (3) the name and term of employment of PPD's public records officer; (4) how the public records officer was hired; and (5) the on-duty hours for PPD officers who have a rank above patrol officer.

25.     Separately, Plaintiff's request to PPD sought government information about three

items: (1) the total number of criminal investigations opened per year for the last five years; (2) the number of cases closed by each investigator for those years; and (3) the names of the investigators who closed the cases.

26.    Plaintiff made his requests through two separate electronic forms on the Town of Prosper's website: one for public information in PPD's custody, and the other for public information in the Town's custody. Both forms required that Plaintiff provide, at a minimum, a name and email address for PPD to process his request. Without this information, these forms would have prevented Plaintiff from submitting his requests.

27.    Plaintiff had reservations about using his real name. With remarkable foresight, he was concerned that asking for these records could prompt retaliation from the police department, and he did not want to jeopardize his wife's employment with the Town of Prosper.

28.    Plaintiff therefore supplied the pseudonym "Geoff Hodges" and the email address "prospercitycouncil@gmail.com" to submit his public records requests. The display name he chose for the email—the name that appears to recipients of email from the account—was "city council." Plaintiff created the "prospercitycouncil@gmail.com" email address shortly before submitting his records requests to PPD.

29.    Plaintiff chose the name "Geoff Hodges" and the email address "prospercitycouncil@gmail.com" as tongue-in-cheek references to Prosper's government—both monikers which reflected Plaintiff's desire to hold the Town accountable. "Geoff Hodges" is similar to the name of a Town Councilmember for Place 5, Jeff Hodges. The email handle "prospercitycouncil" is a deliberate nod to Prosper, but differs in an important and noticeable way—Prosper is a town, not a city, and is governed by a Town Council, not a City Council.[1]

---

[1] *See* https://www.prospertx.gov/223/Town-Council.

30.     Other indicators would have made it apparent to a person communicating with Plaintiff that he was using a pseudonymous name and email account. For one, his email address did not resemble the Town of Prosper's official government email domain:  Plaintiff was clearly using a gmail account, while Prosper's official email addresses all use an "@prosperx.gov" domain, signifying the email is an official government account.

31.     Additionally, while using the "prospercitycouncil@gmail.com" email to communicate about his TPIA requests, Plaintiff never once signed his emails as Geoff Hodges, held himself out as a person named Geoff Hodges (let alone Town Councilmember Jeff Hodges) or claimed he had any official status or authority that he was attempting to wield for his benefit.

32.     On October 27, 2020, the Prosper Police Department—in two separate letters addressed to "Geoff Hodges"—issued formal responses to Plaintiff's two records requests. In response to Plaintiff's request for PPD's organizational chart and other documents, PPD provided him with links to the Town's website, and the name of the employee responsible for fulfilling public information requests to PPD—Devin Reaves. As for Plaintiff's request for criminal investigation data, PPD by separate letter claimed that no responsive records exist, because "[t]he town is not required to compile statistics or create a new document in response to a request."

33.     This answer troubled Plaintiff. PPD's statement that these records did not exist conflicted with his basic knowledge of law enforcement records. Plaintiff asked for these specific items precisely because he was aware that this data was compiled into a report and submitted to Prosper Town Council and the Prosper City Manager each month.

34.     As a result, Plaintiff decided to escalate his concerns to the full Prosper Town Council, the Mayor, and Town Manager directly. On November 2, 2020, Plaintiff sent an unsigned message to this group (*including* Council Member Jeff Hodges) through his

"prospercitycouncil@gmail.com" address. In his email, which he sent less than three weeks after his initial requests to PPD, he informed Town officials that he used "a false name and email account when requesting information from the city. As a proud Prosper citizen, *I did so to remain anonymous and protect myself from retaliation*" (emphasis added).

35.    From at least this moment, it should have been clear to any reasonable official that Plaintiff was not attempting to impersonate anyone or wield any official authority he did not have.

**C. Prosper Police Department Lt. Paul Boothe, at the Direction of Chief Kowalski and the Prosper Town Council, Embarks on a Nine-Month Long Investigation to Uncover Plaintiff's Identity and Prosecute Him for Impersonating a Public Official.**

36.    When PPD Public Information Clerk Devin Reaves received Plaintiff's TPIA requests, she did not believe they were from Council Member Jeff Hodges, but still forwarded them to her supervisors, Defendants Boothe and Kowalski, per departmental protocol.

37.    Upon receipt, Chief Kowalski first contacted Town Manager Harlan Jefferson via phone to inquire why Councilmember Hodges was asking for this information. When Mr. Jefferson responded he did not know, Chief Kowalski then called Council Member Hodges. Kowalski informed Hodges of the name of the requestor, noting the different spelling. Council Member Hodges confirmed that he was not the person requesting these records.

38.    On information and belief, around this same time, the full Prosper Town Council met to discuss the issue of the identity of the person behind the "prospercitycouncil@gmail.com" email and concurred as a full body to direct PPD to initiate an investigation into the matter. Accordingly, the Prosper Town Council, acting as the final policymaker for the Town of Prosper, officially directed PPD Chief Kowalski to begin an investigation into Plaintiff's identity.

39.    Chief Kowalski, acting on the Town Council's direction, ordered Lt. Boothe—as then-head of the Criminal Investigations Division—to conduct an investigation into the "Geoff

Hodges" requests in order to identify and prosecute the person behind the requests.

40.    One of the first steps Lt. Boothe took was to issue a document preservation hold to Google for Plaintiff's "prospercitycouncil@gmail.com" email on November 4, 2020—two days *after* Plaintiff emailed Town Council disclaiming any intent to impersonate a Town official.

41.    At around the same time, Plaintiff began submitting TPIA requests to PPD from a separate pseudonymous account under the name "Sam Kingston." On November 3 and November 6, 2020, Plaintiff submitted requests for similar records to those he had already asked for using the "propercitycouncil@gmail.com" email: organizational charts, a list of exempt employees, core business hours for sergeants and lieutenants, and the personnel file for Devin Reaves.

42.    Like Plaintiff's requests using the "prospercitycouncil@gmail.com" email, nothing about Plaintiff's requests as "Sam Kingston" was improper. The name "Sam Kingston" did not even closely resemble any Town official, nor did the affiliated email address reference the Town of Prosper. For all Lt. Boothe and other Prosper employees knew, Sam Kingston was a separate person asking for similar information as the "prospercitycouncil@gmail.com" requests.

43.    Nonetheless, Lt. Boothe believed "Sam Kingston" was affiliated with the requestor who had been submitting TPIA requests under the "prospercitycouncil@gmail.com" email. He thus submitted a document preservation request to Google on November 9, 2020 for the email address affiliated with "Sam Kingston"—"samk38043@gmail.com."

44.    With these document holds issued, on or around November 12, 2020, Lt. Boothe obtained and served subpoenas to Google for the account information, IP address information,[2] recovery emails, and phone numbers associated with both the "prospercitycouncil@gmail.com"

---

[2] An IP ("Internet Protocol") address is "a unique address that identifies a device on the internet or a local network." It is "the identifier that allows information to be sent between devices on a network: they contain location information and make devices accessible for communication." *See* https://usa.kaspersky.com/resource-center/definitions/what-is-an-ip-address (last accessed June 17, 2023).

and "samk38043@gmail.com" email addresses. But these records did not reveal Plaintiff's identity. Lt. Boothe therefore expanded his use of legal process to obtain even more detailed records about Plaintiff's pseudonymous email accounts.

45.    On March 5, 2021, Lt. Boothe obtained a search warrant for the contents of the "prospercitycouncil@gmail.com" email address from Collin County Judge Benjamin Smith of the 380th District Court. To obtain this search warrant, Lt. Boothe attached a facially deficient affidavit which omitted key, exonerative details which would have made a reasonable official conclude that Lt. Boothe's investigation was baseless.

46.    Though the affidavit correctly explained that Plaintiff, using his "prospercitycouncil@gmail.com" account, "created and submitted online records requests … to the Town of Prosper, requesting official government records held by the Town of Prosper and/or the Prosper Police Department[,]" at no point does the affidavit clarify or explain that Plaintiff was requesting public records under the TPIA. By omitting these details, Lt. Boothe lays a narrative that Plaintiff was requesting records to which he was not otherwise entitled.

47.    Boothe also mischaracterized Plaintiff's November 2, 2020 email to the Town Council, stating that Plaintiff "admitted to using a fictitious name and fictitious email account in an attempt to obtain official government records." He thus intentionally or recklessly omitted Plaintiff's explanation that he did so to maintain his anonymity—not to impersonate Council Member Jeff Hodges or wield any pretended official authority he did not have.

48.    Lt. Boothe failed to disclose that, in correspondence with Town of Prosper employees or elected officials, Plaintiff never signed his emails as Geoff Hodges, Jeff Hodges, or held himself out as a member of the Town Council or any other person wielding official authority.

49.    In the whole of the affidavit, Lt. Boothe not once uses the words "public records"

or references the Texas Public Information Act; nor does he ever acknowledge that Plaintiff—despite his use of a pseudonymous name and email—was following the lawful process for requesting public records from a governmental body.

50.     Lt. Boothe—in failing to explain that Plaintiff, using his pseudonymous identity, was requesting records under the TPIA—also omitted exonerative language in the TPIA that governmental bodies are required to "treat all requests for information uniformly without regard to the position or occupation of the requestor, the person on whose behalf the request is made, or the status of the individual as a member of the media." Tex. Gov't Code § 552.223.

51.     Lt. Boothe consequently intentionally or recklessly omitted from this affidavit what "pretended official authority" Plaintiff wielded that was different from the authority which any other member of the public possessed under the TPIA. Tex. Penal Code § 37.11(a)(1).

52.     The material omissions and misrepresentations in Lt. Boothe's search warrant affidavit concealed the fact that Lt. Boothe lacked probable cause to search Plaintiff's "prospercitycouncil@gmail.com" email account. These misrepresentations and omissions induced Judge Smith to sign off on the search warrant and permit Lt. Boothe to unlawfully search the contents of Plaintiff's email account.

53.     Three days later, on March 8, 2021, Lt. Boothe sought and obtained another search warrant from Judge Smith for the contents of the Sam Kingston email, "samk38043@gmail.com."

54.     Like his affidavit of probable cause for the "prospercitycouncil@gmail.com" email, Lt. Boothe reproduced the same misleading factual narrative about Plaintiff's attempt to seek public records from the Town. He also added new details regarding Plaintiff's use of the "Sam Kingston" email as a purported instrument in the crime of Impersonating a Public Servant.

55.    In particular, Lt. Boothe's affidavit added outright false allegations about Plaintiff's request for personnel records using the Sam Kingston pseudonym. Boothe averred that, because the personnel records Plaintiff requested (as Sam Kingston) were law enforcement-sensitive, the Town was entitled to verify his identity before disclosing them. Boothe then alleged "[t]he unknown suspect has refused all efforts to present him/herself and to identify themselves and prove the right to access information-as required."

56.    Lt. Boothe intentionally or recklessly misled the Court when he made this statement. In the course of handling Plaintiff's lawful TPIA requests for these records, no agent of the Town of Prosper *ever* attempted to communicate with Plaintiff in order to verify his identity, or asked him to offer any form of proof establishing a right to these records before deciding whether to disclose them to him. And at no time did Plaintiff, under the Sam Kingston or Geoff Hodges pseudonyms, ever assert any sort of official entitlement or personal right to these records.

57.    Boothe's misrepresentations to the Court about the Town of Prosper's interactions with Plaintiff under the pseudonym Sam Kingston created the impression that Plaintiff was asking for records he was not entitled to. Even if some of the records he asked for *may* have been excepted from disclosure by law (though that fact is far from certain), Plaintiff still had an absolute legal right under the First Amendment and the TPIA to request them—a fact which Boothe also failed to address in his probable cause affidavit. *See* Tex. Gov't Code § 552.221(a).

58.    Like his search warrant affidavit for the "prospercitycouncil@gmail.com" records, Lt. Boothe's misrepresentations and exonerative omissions induced Judge Smith to sign off on the search warrant and permitted Lt. Boothe to unlawfully search the contents of Plaintiff's email account in violation of his Fourth Amendment right to be free from unreasonable searches.

59.    On or around March 17, 2021, Lt. Boothe received the contents of both the

"prospercitycouncil@gmail.com" and Sam Kingston email accounts as a result of his unlawfully procured search warrants. This proved to be a turning point in his investigation. Lt. Boothe found an email on Plaintiff's "prospercitycouncil@gmail.com" from OpenTable, confirming a reservation at Tommy Bahama Restaurant & Bar in Plano, Texas on November 2, 2020. Through an April 15, 2021 subpoena on Tommy Bahama, Lt. Boothe confirmed that Plaintiff was the person who made this reservation through the "prospercitycouncil@gmail.com" email account.

60.      Other records would soon similarly confirm Plaintiff was the owner of the "prospercitycouncil@gmail.com" and Sam Kingston emails. On March 25, 2021, Lt. Boothe served another subpoena on AT&T to identify the account affiliated with a set of IP addresses that he had linked to both accounts. On April 20, 2021, AT&T responded to the subpoena by informing Boothe that the requested IP addresses were affiliated with Leonard Johnson.

**D. Plaintiff's Wife Roxanna is Fired from the Town of Prosper without Cause for Allegedly Supplying Plaintiff with Confidential Information.**

61.      On May 20, 2021, Plaintiff's wife Roxanna was placed on administrative leave from her job as a precursor to her ultimate termination. As part of his investigation, Lt. Boothe had developed a suspicion that she played a role in Plaintiff's pseudonymous public records requests and communications with the Prosper Town Council. Lt. Boothe had no evidence to support this, but, on information and belief, Lt. Boothe nonetheless communicated his suspicions to Chief Kowalski and Roxanna's supervisor, Lt. Ron Castro.

62.      That day, prior to placing her on administrative leave, Lt. Boothe held a criminal interview with Roxanna. He informed her of the reason for the interview—that her husband Leonard was being investigated for the third-degree felony of Impersonating a Public Servant, due to the records requests Plaintiff had filed with PPD and the Town of Prosper. As soon as the interview concluded, Roxanna, now on administrative leave, called her husband and explained to

him that she had been put on leave and that he was officially under criminal investigation.

63.     Plaintiff was deeply fearful of what was to come. He was certain he had done nothing wrong by asking for records anonymously. To try to deescalate the situation, Plaintiff called Marcus Ray, Council Member for Place 1, the afternoon of May 20, 2021. On the call, Plaintiff revealed himself as Leonard Johnson and explained to Ray that he was the person who had submitted the anonymous TPIA requests using the name Sam Kingston. Plaintiff told Council Member Ray that he used this identity to maintain his anonymity. Council Member Ray responded that he did not have the ability to intervene and gave his well wishes to Plaintiff. Subsequently, Council Member Ray informed Council Member Hodges and Lt. Boothe of his conversation with Plaintiff, and filled out a statement memorializing his recollection of the call.

64.     Plaintiff's phone call to Council Member Ray would prove to be one of the final steps in Lt. Boothe's unlawful investigation into Plaintiff's identity. To corroborate the identity of the person who called Council Member Ray, Lt. Boothe verified through a June 22, 2021 subpoena to AT&T that the number used to call Ray was affiliated with Plaintiff.

### E.  Lt. Boothe Unconstitutionally Arrests Plaintiff after Obtaining an Unlawful Arrest Warrant and an Unlawful Search Warrant.

65.     Having confirmed Plaintiff's identity, on July 19, 2021, Lt. Boothe obtained an unlawful arrest warrant for Plaintiff and an unlawful search warrant for his electronic devices, again from Judge Benjamin Smith of the 380th District Court. As with his prior search warrants, Lt. Boothe swore to a facially deficient and misleading warrant affidavit which alleged he had probable cause to believe that Plaintiff committed the offense of Impersonating a Public Servant under Texas Penal Code Section 37.11(a)(1).

66.     No reasonable officer acting on the information Lt. Boothe had compiled through his investigation would have believed he had probable cause to arrest Plaintiff for this offense.

14

67. There was no probable cause because Plaintiff neither held himself out to be Council Member Jeff Hodges, nor did his conduct show any intent for Town officials to submit to his "pretended official authority" when using a pseudonym to lawfully initiate a public records request. *See Cornwell v. State*, 471 S.W.3d 458, 464 (Tex. Crim. App. 2015) ("An accused may not be convicted on a simple showing that he falsely held himself out to be a public servant.").

68. Accordingly, Defendant Boothe, with the knowledge and approval of Defendant Kowalski, acted unreasonably when he knowingly or recklessly obtained a warrant to arrest Plaintiff and seize his belongings without probable cause.

69. To obtain this warrant, Defendant Boothe failed to allege the necessary elements of the Impersonation offense, and omitted key exonerative details which, had they been included, would have revealed to any reasonable official that Defendant Boothe lacked probable cause to suspect that Plaintiff had acted unlawfully.

70. Like Lt. Boothe's prior warrant affidavits, these affidavits posited that Plaintiff created the "prospercitycouncil@gmail.com" address and used the pseudonym "Geoff Hodges" to submit three separate "Public Information Requests." Thus, for the first time throughout the course of his investigation, Lt. Boothe acknowledged that the requests Plaintiff submitted were for public records under the TPIA. But Lt. Boothe did not allege that Plaintiff wielded the name "Geoff Hodges" to assert any official entitlement or authority to obtain these records. Nor did Boothe note the TPIA's mandate that "all requests for information" shall be treated "uniformly without regard to the position or occupation of the requestor[.]" Gov't Code § 552.223.

71. Lt. Boothe's warrant affidavits also acknowledged that Plaintiff used a "modified name"—"Geoff Hodges"—that was spelled differently from Town Council Member Jeff Hodges. He also averred that a search of a Texas driver's license database revealed that the name "Geoff

Hodges" did not exist. These facts, taken with the fact that Plaintiff supplied an obviously unofficial email address—"prospercitycouncil@gmail.com"—undermined Lt. Boothe's claim of probable cause that Plaintiff committed the Impersonation offense.

72.     To prop up his wafer-thin basis for probable cause, Lt. Boothe pointed to Plaintiff's November 2, 2020 email when, according to Lt. Boothe, Plaintiff "admitted to using a fictitious name and fictitious email account to submit records requests in an attempt to obtain official government records." But the TPIA does not require that requestors supply any name at all, let alone a real name, to make a request for public records. *See* Tex. Gov't Code § 552.221(a) (requiring a public information officer to respond to a request made by "any person"); *Id.* § 552.222(a) (permitting, but not mandating, an inquiry by a governmental body to a requestor to establish proper identification). Nor does the fact that Plaintiff was asking for official government records make his use of a pseudonym any more salient to the probable cause analysis—any requestor who uses the TPIA has a statutory right to request official government records, regardless of the type or content of the record. *Id.*

73.     Lt. Boothe's affidavit also noted that Plaintiff used the Sam Kingston pseudonym and "samk38043@gmail.com" email "in furtherance of the offense of Impersonating a Public Servant." But he never explains precisely how Plaintiff's use of this separate email supported his claim of probable cause. He did not allege that the names "Sam King" or "Sam Kingston" were the names of any current or former Town of Prosper official, or that Plaintiff claimed any official authority when corresponding with any Town of Prosper official using that name and email.

74.     Lt. Boothe's affidavit also falsely describes the call between Plaintiff and Council Member Ray on May 20, 2021 as a "confession to Mr. Ray that [Plaintiff] was the person who had submitted the open records requests, using the Gmail address prospercitycouncil@gmail.com

and the name Geoff Hodges to represent himself to Town officials for the purpose of seeking records from the Town of Prosper and the Prosper Police Department."

75.    In actuality, during this call Plaintiff never discussed nor admitted to using the "prospercitycouncil" gmail address and Geoff Hodges pseudonym. Plaintiff only described his use of the Sam Kingston name and email to seek public records and converse with Town officials.

76.    Nor did Lt. Boothe explain how his claim, even if true, supported any element of the crime of Impersonating a Public Official. He did not allege that Plaintiff confessed to pretending to be Council Member Jeff Hodges, or that he pressed any public official to submit to his pretended authority as a sitting Town Council Member in order to seek non-public records.

77.    At bottom, the allegations presented by Lt. Boothe failed on their face to show there was probable cause Plaintiff had met each of the essential elements of the offense of Impersonating a Public Servant. What Lt. Boothe lacked in substantive allegations, he compensated for with detail about the lengths he went to unmask Plaintiff.

78.    Lt. Boothe also willfully omitted exculpatory information that would have further shown that he lacked probable cause. For example, in describing Plaintiff's November 2, 2020 email to Town Council in which he admitted to using a pseudonym, Lt. Boothe failed to add Plaintiff explained he did so to protect his anonymity out of a fear of retaliation. This fact alone eliminated the necessary state of mind for the offense. *See* Tex. Penal Code § 37.11(a)(1).

79.    Lt. Boothe also failed to include that Plaintiff only used the "Geoff Hodges" pseudonym three times, each time specifically to supply a name in the request form *required* by the Town of Prosper. He never signed any of his emails with the name "Geoff Hodges" or claimed he was Council Member Jeff Hodges.

80.    Lt. Boothe also withheld that not a single person from the Town of Prosper with

the authority to ask Plaintiff to verify his identity ever did so between his first request on October 14, 2020 and when Lt. Boothe obtained his arrest warrant on July 19, 2021.

81.    Again, as a result of Lt. Boothe's facially deficient warrants, which omitted key exculpatory facts that were essential to the probable cause determination, Lt. Boothe obtained District Judge Benjamin Smith's sign-off on the arrest and search warrants on July 19, 2021.

82.    The next day, on July 20, 2021, Lt. Boothe and six other officers of the Prosper Police Department executed the warrants at Plaintiff's home in Frisco, Texas. There, Lt. Boothe arrested Plaintiff. During the search of his house pursuant to the unlawfully obtained search warrant, officers seized six items: (1) a Surface Pro tablet; (2) two ASUS routers, (3) a Motorola router, (4) an AT&T router; and (5) an iPhone 12. Plaintiff was then booked into the Collin County Jail, and released that day on a $10,000 bond, of which he paid $1,000 to secure his release.

83.    Subsequently, on November 4, 2021, Plaintiff was indicted for Impersonating a Public Servant by a Collin County grand jury. This indictment alleged Plaintiff "impersonate[d] a public servant, namely Jeff Hodges, a Prosper City Councilman, with intent to induce Devin Reaves to submit to the pretended official authority of the defendant or to rely on the pretended official acts of the defendant by sending open records requests to the Prosper Police Department in attempt [sic] to obtain police records[.]"

84.    Because Defendant Boothe was the sole affiant who attested to the facially deficient and flawed factual narrative which he used to obtain the July 19, 2021 search and arrest warrants, he also was, on information and belief, the sole witness produced to the grand jury to testify to the facts on which the grand jury based Plaintiff's indictment.

85.    On information and belief, Lt. Boothe testified to the same basic, tainted set of facts that he alleged in his previous warrant affidavits, which included the same material

omissions and misrepresentations that induced District Judge Benjamin Smith to sign off on the search and arrest warrants Lt. Boothe had previously obtained from him. Thus, the grand jury's indictment was itself tainted by Lt. Boothe's misrepresentations and material omissions.

86.     As a result of his arrest and prosecution, Plaintiff was forced to incur the expense of hiring a criminal defense attorney to represent him in his criminal case, which was assigned to Judge John R. Roach, Jr. of the 296th District Court in Collin County.

87.     For about a year, Plaintiff diligently met each of his court deadlines as his case proceeded. Then, on November 6, 2022, Plaintiff filed a motion to quash his indictment, alleging three grounds: (1) that the indictment failed to state an offense; (2) that Plaintiff's right to use a pseudonym in seeking public information was protected by the First Amendment; and (3) that Plaintiff's right to make a public information request was also protected by the First Amendment.

88.     The very next day, on November 7, 2022, the District Court granted the motion and quashed Plaintiff's indictment, without opposition from the Collin County District Attorney. Following the District Court's grant, the Court formally discharged Plaintiff on December 13, 2022, which successfully terminated the criminal case against him.

89.     Though the District Court did not explain on the record its specific basis for quashing the indictment, any of the three bases Plaintiff advanced to the District Court as a basis to quash independently supports an inference that the grand jury was tainted by Lt. Boothe's legally and factually erroneous grounds for charging Plaintiff with Impersonating a Public Official under Texas Penal Code Section 37.11(a)(1).

90.     Plaintiff suffered physical, economic, emotional, and reputational harm as a result of his unlawful and retaliatory arrest at the hands of Defendants.

91.     He incurred emotional harm due to the trauma and shame of being arrested for

what he thought was an entirely proper and lawful effort to exercise his constitutional and statutory rights to hold Town of Prosper public officials accountable. Additionally, the fear of the looming criminal prosecution and the potential consequences to him and his family if he were to be convicted caused chronic stress, anxiety, and depression.

92.    Moreover, the embarrassment and shame Plaintiff suffered due to his arrest linger to this day. Plaintiff's circle of friends and family include long serving members of his local law enforcement and public safety communities. Plaintiff's arrest cast a shadow on his reputation, ostracized him from close friends, and left him feeling isolated due to the perceived taint on his honor and integrity that came with his arrest, felony indictment, and year-long prosecution.

## V.    Causes of Action

### COUNT I
**Wrongful Arrest**
**U.S. Const. Amends. IV and XIV, and 42 U.S.C. § 1983**
(Defendants Boothe and Kowalski)

93.    Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

94.    Under the Fourth Amendment to the United States Constitution, as applied to the State of Texas and instrumentalities of the state under the Fourteenth Amendment, Plaintiff has a right to be free from an unlawful arrest that is not supported by probable cause.

95.    Defendants Boothe and Kowalski, acting at all times under color of state law, knowingly arrested and detained Plaintiff against his will and without probable cause, in deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

96.    Defendants at all times lacked a valid basis to arrest Plaintiff. Knowing this, Defendant Boothe (1) knowingly prepared a facially deficient probable cause affidavit; (2) knowingly prepared a probable cause affidavit which withheld exculpatory information; (3)

relying upon the facially deficient and misleading probable cause affidavit, sought and obtained a facially deficient arrest warrant under a pretextual application of Texas Penal Code § 37.11; and (4) knowingly arrested and detained Plaintiff without probable cause and against his will, based on a knowing or deliberately indifferent wrongful application of Texas Penal Code § 37.11.

97.     Defendants Boothe and Kowalski willfully arrested and detained Plaintiff, or willfully caused and directed Plaintiff's arrest and detention, with malice and/or a reckless and callous disregard for, and deliberate indifference to, his constitutional rights.

98.     It was clearly established at the time of Plaintiff's arrest that an official acting under color of law cannot seize and detain a person without probable cause, nor can an official do the same in response to that person engaging in constitutionally protected activity, including asking questions of public officials, requesting public records from them, and communicating with public officials about matters of public concern, including under an assumed name.

99.     It would have been clear to any reasonable law enforcement officer that no probable cause existed to arrest and detain Plaintiff under Texas Penal Code § 37.11. No reasonable official would have relied upon the statute to so unlawfully, willingly, and arbitrarily act to cause the arrest and detention of a citizen based on Plaintiff's constitutionally protected activities. It also would have been clear to a reasonable official that applying the statute to Plaintiff under the circumstances was unconstitutional.

100.     As a direct and proximate cause of the actions of Defendants Boothe and Kowalski, Plaintiff was deprived of his rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution, and suffered damage to his reputation, wrongful incarceration, legal and other costs, and fear of further retaliation from Defendants. The Defendants' acts have caused Plaintiff to suffer further injuries, including financial hardship, physical and mental

anguish, emotional distress, humiliation, and public embarrassment.

101.    Plaintiff is entitled to actual, compensatory, and punitive damages against Defendants Boothe and Kowalski under 42 U.S.C. § 1983 in an amount to be proven at trial.

## COUNT II
### Direct and Retaliatory Violations of Free Speech and the Right to Petition
### U.S. Const. Amends. I and XIV, and 42 U.S.C. § 1983
(Defendants Boothe and Kowalski)

102.    Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

103.    Defendants Boothe and Kowalski willfully acted to retaliate against Plaintiff for his exercise of his First Amendment rights to free speech and to petition the Town of Prosper.

104.    Defendants' retaliatory acts include (but are not limited to): targeting Plaintiff for investigation and arrest under a pretextual statute; deliberately submitting deficient and misleading search and arrest warrant affidavits while knowing that no probable cause existed to search or arrest Plaintiff; and causing the arrest and detention of Plaintiff without probable cause.

105.    Defendants willfully acted to interfere with Plaintiff's attempts to ask questions and request public information from the Town of Prosper, as shown by Plaintiff's unlawful arrest.

106.    Each of Defendants' acts, as alleged herein, were undertaken under color of law.

107.    Each of the Defendants' retaliatory acts were undertaken with actual and/or constructive knowledge that Plaintiff was engaging in protected First Amendment activity, including (1) making inquiries to Town of Prosper officials on matters of public concern; (2) making said inquiries using an anonymous email address; (3) asking for public records using the lawful process created by the Texas Public Information Act, and corresponding with Town of Prosper officials about those requests; and (4) creating a website entitled Prosper Police Oversight to publish the police records he had lawfully obtained.

108.    Defendants Boothe and Kowalski were substantially motivated to punish Plaintiff for exercising his protected First Amendment activity and to chill him from doing so moving forward. Because of their animus towards Plaintiff in seeking potentially damaging public records from the Prosper Police Department, Defendants Boothe and Kowalski wrongfully and unlawfully investigated, arrested, and detained Plaintiff, or acted to cause the same.

109.    Defendants Boothe and Kowalski made the decision to target Plaintiff under Texas Penal Code § 37.11, Impersonating a Public Servant, despite knowing that Plaintiff's conduct did not meet, and never met, the essential elements of that offense.

110.    No reasonable law enforcement officer would have investigated and arrested Plaintiff knowing that requesting publicly-accessible information and anonymously corresponding with Town officials is protected under the First Amendment.

111.    Defendants' actions injured Plaintiff in a way that was likely to chill a person of ordinary firmness, and did chill Plaintiff, from further participation in First Amendment protected activity, including the protected activity in which Plaintiff engaged.

112.    The retaliatory acts perpetrated by Defendants caused Plaintiff physical, economic, emotional, and reputational harm. As a result of his arrest, Plaintiff suffered severe nerve damage in both wrists that caused carpal tunnel syndrome. He had surgery on his right wrist to alleviate pain and restore functionality, needing the same for his left. These injuries prevent him from doing things he enjoys like fishing and lifting weights. Moreover, the resulting surgical scars serve as a constant reminder of Plaintiff's arrest and frequently trigger the anxiety it caused.

113.    Plaintiff experienced the embarrassment of having to report his arrest and criminal charge to his superiors at work; and since reporting his arrest, Plaintiff has been turned down for over eighty (80) other positions for which he has applied and is otherwise qualified.

114.    Plaintiff's reputation was harmed when he was arrested in front of close friends of his—employees of the Frisco Police Department who responded to the scene of Plaintiff's arrest when Lt. Boothe executed the arrest and search warrant at Plaintiff's home. Two of these individuals had to stand guard and supervise him while he was held in custody after his arrest.

115.    Plaintiff's resulting emotional injuries include chronic depression and anxiety.

116.    Defendants' retaliatory actions also caused and continue to cause Plaintiff to constantly fear further harassment and retaliation from the Prosper Police Department and other Town of Prosper officials, and to curtail his own exercise of his First Amendment rights.

117.    The actions of Defendants Boothe and Kowalski violated Plaintiff's clearly established rights under the First and Fourteenth Amendments to the United States Constitution, of which a reasonable law enforcement officer would have been aware. It was clearly established at the time of Plaintiff's arrest that the First Amendment protects the right of every person to ask questions of their government, and to communicate with public officials without fear of retaliation or reprisal, including when they do so anonymously or pseudonymously.

118.    Plaintiff is entitled to actual, compensatory, and punitive damages against Defendants Boothe and Kowalski under 42 U.S.C. § 1983 in an amount to be proven at trial.

### COUNT III
**Unlawful Search and Seizure**
**U.S. Const. Amends. IV and XIV, and 42 U.S.C. § 1983**
(Defendants Boothe and Kowalski)

119.    Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

120.    Under the Fourth Amendment to the United States Constitution, as applied to the State of Texas and instrumentalities of the state under the Fourteenth Amendment, Plaintiff has a right to be free from an unlawful search that is not supported by probable cause that Plaintiff had

engaged, was engaging, or was about to engage in any criminal conduct.

121.    Defendants Boothe and Kowalski, acting at all times under color of state law, knowingly searched the contents of Plaintiff's electronic accounts against his will and without probable cause, in deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

122.    Defendants at all times lacked a valid basis to search Plaintiff's electronic accounts and devices. Knowing this, Defendants Boothe and Kowalski (1) knowingly prepared facially deficient probable cause affidavits; (2) knowingly prepared probable cause affidavits which withheld exculpatory information; and (3) knowingly searched and/or caused a search of Plaintiff's electronic devices and accounts without probable cause and against his will, based on a knowing or deliberately indifferent wrongful application of Texas Penal Code § 37.11.

123.    Defendants Boothe and Kowalski willfully searched Plaintiff's electronic devices and accounts, or willfully caused and directed Plaintiff's electronic devices and accounts to be searched, with malice and/or a reckless and callous disregard for his constitutional rights.

124.    It was clearly established at the time of Plaintiff's arrest that an official acting under color of state law cannot search and seize his personal property without probable cause, especially when that person is engaging in constitutionally-protected activity, including requesting public records, asking questions of government officials or communicating with them about matters of public concern, even when done anonymously or pseudonymously.

125.    It would have been clear to a reasonable law enforcement officer that no probable cause existed to search and seize Plaintiff's accounts and devices under Penal Code § 37.11.

126.    As a direct and proximate cause of the actions of Defendants Boothe and Kowalski, Plaintiff was deprived of his rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States. Plaintiff suffered damage to his reputation,

wrongful incarceration, legal and other costs, and fear of further retaliation from Defendants. The Defendants' acts have caused Plaintiff to suffer further injuries, including financial hardship, physical and mental anguish, emotional distress, humiliation, and public embarrassment.

127.    Plaintiff is entitled to actual, compensatory, and punitive damages against Defendants Boothe and Kowalski under 42 U.S.C. § 1983 in an amount to be proven at trial.

**COUNT IV**
**Supervisory Liability**
**U.S. Const. Amends. I, IV, XIV, and 42 U.S.C. § 1983**
(Defendant Kowalski)

128.    Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

129.    At all relevant times, Defendant Kowalski had supervisory duties over all PPD officers and employees. Defendant Kowalski was also responsible at all relevant times for training, supervising, and employing individuals within PPD, including Defendant Boothe.

130.    Defendant Kowalski, with actual and constructive knowledge, approved and ratified the unlawful and malicious investigation into Plaintiff's exercise of his First Amendment rights by asking questions of Town of Prosper officials and requesting public information.

131.    PPD's unlawful investigation into Plaintiff was done at Defendant Kowalski's behest and with Defendant Kowalski's approval. In affirmatively ordering the unlawful investigation into Plaintiff and, on information and belief, continuing to ratify this unlawful investigation every step of the way, Defendant Kowalski presided over and caused Defendant Boothe to pursue his unlawful, malicious, and retaliatory investigation into Plaintiff for exercising his First Amendment rights, and his resulting unlawful arrest without probable cause.

132.    In doing so, Defendant Kowalski acted at least with deliberate indifference to Plaintiff's constitutional rights under the First Amendment to the United States Constitution to

ask questions of and correspond with his government without fear of retaliation, and Plaintiff's right under the Fourth Amendment to be free from unreasonable searches and seizures.

133.    Defendant Kowalski acted with malice and/or deliberate indifference to Plaintiff's rights because of his hostility towards members of the public asking legitimate questions about the activities of the Prosper Police Department.

134.    At all times relevant to these allegations, Defendant Kowalski knew or should have known that his subordinate Defendant Boothe acted unconstitutionally. It was clearly established at the time of Plaintiff's arrest that an official cannot restrict, interfere with, or punish a person for inquiring to a government body or communicating with officials on matters of public concern; and especially cannot search and seize a person's effects without probable cause.

135.    As a direct and proximate cause of the supervisory actions of Defendant Kowalski, Plaintiff was deprived of his rights guaranteed by the First, Fourth, and Fourteenth Amendments, and suffered damage to his reputation, wrongful incarceration, legal and other costs, and fear of further retaliation. Defendant's acts have caused Plaintiff to suffer further injuries, including financial hardship, physical and mental anguish, humiliation, and public embarrassment.

136.    Plaintiff is entitled to actual, compensatory, and punitive damages against Defendant Kowalski under 42 U.S.C. § 1983 in an amount to be proven at trial.

### COUNT V
**Municipal Liability**
**U.S. Const. Amends. I, IV, XIV, and 42 U.S.C. § 1983**
(Defendant Town of Prosper)

137.    Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

138.    At all times relevant to the allegations made here, Defendant Town of Prosper developed, ratified, and enforced an official city policy and/or custom that constitutes

impermissible state action intended to restrict and interfere with Plaintiff's First Amendment activity, and to retaliate against Plaintiff for the same.

139.    Specifically, the Town's unconstitutional policy was a decision to retaliate against and punish Plaintiff for (1) lawfully requesting public information under a pseudonym using the Town of Prosper's public records portals; and (2) corresponding with Town officials using an anonymous email about matters of public concern.

140.    The Town's official policy is reflected in its collective decision to direct Defendant Kowalski, as head of the Prosper Police Department, to investigate and prosecute the person who used the name "Geoff Hodges" when making lawful public records requests through the Town of Prosper's public records portals. Though the Town of Prosper was aware as of at least November 2, 2020 that Plaintiff used the "Geoff Hodges" pseudonym in order to maintain his anonymity, the Town, on information and belief, continued to ratify the malicious investigation into Plaintiff's identity and, consequently, his unlawful arrest and detention in retaliation for exercising his First Amendment rights of free speech and petition.

141.    The Town of Prosper's unconstitutional policy was developed, ratified, and enforced at all times under color of law by officials vested with final policymaking authority.

142.    At all times relevant to the allegations herein, Defendant Town of Prosper and its policymakers knew or should have known that their official policy was unlawful. Plaintiff's rights to pseudonymously or anonymously (1) ask questions of government officials and (2) seek government records without fear of retaliation or reprisal were clearly established at the time Defendant instituted its unconstitutional policy, and at the time of Plaintiff's arrest.

143.    The Town of Prosper's policy was the moving force behind the deprivation of Plaintiff's constitutional rights because it contributed to and caused Plaintiff's wrongful arrest

done without probable cause and in retaliation for his exercise of his First Amendment rights.

144.    As a direct and proximate cause of the actions of Defendant Town of Prosper's unconstitutional official policy, Plaintiff was deprived of his rights guaranteed by the First, Fourth and Fourteenth Amendments to the Constitution of the United States, and suffered damage to his reputation, wrongful incarceration, legal and other costs, and fear of further retaliation from Defendant. Defendant's acts have caused Plaintiff to suffer further injuries, including financial hardship, physical and mental anguish, emotional distress, and public embarrassment.

145.    Plaintiff is entitled to actual and compensatory damages against Defendant Town of Prosper under 42 U.S.C. § 1983 in an amount to be proven at trial.

### COUNT VI
### Declaratory Judgment
(All Defendants)

146.    Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

147.    A justiciable controversy exists between the parties involving the deprivation of Plaintiff's rights under the First and Fourth Amendments to the United States Constitution— namely, Plaintiff's rights to ask questions of government officials, request government records, and be free from unreasonable searches and seizures.

148.    Plaintiff continues to use the TPIA to submit public records requests from the Town of Prosper, and continues to communicate with public officials within the Town.

149.    Even after Plaintiff's criminal indictment was quashed, Plaintiff continues to fear that Defendants could in the future arbitrarily and maliciously seek to punish him in the future for attempting to use the lawful tools available to Plaintiff to converse with Town of Prosper officials about issues important to the larger Prosper community.

150.    A declaratory judgment will serve to further resolve and clarify the dispute between the parties, and ensure that Plaintiff and other citizens may participate in lawful public accountability efforts using anonymous or pseudonymous methods without fear of retaliation or reprisal from Defendants or other local government officials.

## VI.    Jury Demand

151.    Plaintiff demands a jury trial of all claims in the Complaint on which a jury trial is available.

## VII.    Prayer

152.    Plaintiff respectfully prays that this Court grant the following relief:

a.    The entry of judgment holding Defendants liable for their unlawful conduct;

b.    A monetary judgment awarding Plaintiff actual damages for his mental anguish, personal and professional injuries, and damage to his reputation;

c.    An award of punitive damages against Defendants Boothe and Kowalski in such amount as may be found, or otherwise permitted by law, for the Defendants' retaliatory and malicious intent toward Plaintiff and their callous disregard for his exercise of clearly established constitutional rights;

d.    A declaratory judgment that the retaliatory and malicious investigation, arrest, and detention of Plaintiff violated the First Amendment and Fourth Amendments to the United States Constitution;

e.    An award of costs and attorney's fees;

f.    Pre- and post-judgment interest; and

g.    Such other and further relief to which Plaintiff is justly entitled.

Dated: July 14, 2023                          Respectfully Submitted,

/s/ Thomas S. Leatherbury                     /s/ Peter B. Steffensen
Thomas S. Leatherbury                         Peter B. Steffensen
Texas State Bar No. 12095275                  Texas State Bar No. 24106464
Thomas S. Leatherbury Law, PLLC               psteffensen@smu.edu
Cumberland Hill School Building               SMU DEDMAN SCHOOL OF LAW
1901 N. Akard Street                          FIRST AMENDMENT CLINIC
Dallas, Texas 75201                           P.O. Box 750116
tom@tsleatherburylaw.com                      Dallas, TX 75275
Telephone: (214) 213-5004                     Telephone: (214) 768-4077
                                              Facsimile: (214) 768-1611

                                              *Counsel for Plaintiff*