# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LEONARD JOHNSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:23-cv-650 |
| | § | Judge Mazzant |
| THE TOWN OF PROSPER, TEXAS, | § | |
| et al., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Lt. Boothe and Chief Kowalski's Motion to Dismiss[1] (Dkt. #8). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

### I.    Factual Summary

This is a Section 1983 case in which Plaintiff sued Defendants Lt. Paul Boothe, Chief Doug Kowalski, and the Town of Prosper ("the Town") for violating the First and Fourth Amendments to the U.S. Constitution. Plaintiff alleges that Defendants violated the Fourth Amendment by illegally investigating, arresting, and indicting him for the felony criminal offense of impersonating a public servant under TEX. PENAL CODE § 37.11(a)(1) (Dkt. #1 at ¶ 65). Plaintiff further alleges Defendants violated the First Amendment by retaliating against him for lawfully requesting records under the Texas Public Information Act ("TPIA") (Dkt. #1 at pp. 20–24).

---

[1] Defendant Town of Prosper also filed a Motion to Dismiss on different grounds (*See* Dkt. #9). The Court will consider that Motion separately.

To set the stage, Defendant Kowalski is the Chief of the Town police department (Dkt. #1 at ¶ 8). Defendant Boothe once worked in the department as a Lieutenant (Dkt. #1 at ¶ 7). Plaintiff is a former software application developer whose wife previously worked as a 911 communications manager and head of dispatch for the Town (Dkt. #1 at ¶¶ 13–14). Changes in the Town police department's organization and staffing negatively affected Plaintiff's wife, prompting Plaintiff to develop a plan to draw public attention toward the Town police department's shortcomings (Dkt. #1 at ¶¶ 17, 20). That plan involved using TPIA requests to show that case clearance rates were low under the Town police department's current leadership (Dkt. #1 at ¶ 20). Accordingly, on October 14, 2020, Plaintiff filed three TPIA requests to the Town and its police department via the Town's online portal (Dkt. #16 at p. 9; Dkt. #8-3 at p. 2). The first two requests, filed within minutes of each other, sought information regarding the police department's organizational structure, personnel, and criminal investigation statistics (Dkt. #16 at p. 8; Dkt. #1 at ¶¶ 24–25). The third request, filed two weeks later, was incomplete[2] and therefore warranted no response (Dkt. #16 at p. 8; Dkt. #8-5 at p. 3).

To submit these requests, Plaintiff corresponded with Town officials using a parody email account[3] signed by "Geoff Hodges," a pseudonym that closely resembled the name of Town Councilmember Jeff Hodges (Dkt. #16 at p. 8). Plaintiff made the tongue-in-cheek reference to the Town government—a decision that "reflected [his] desire to hold the town accountable"—because its online forms required a name and email to process his requests

---

[2] According to Defendants, Plaintiff's third request was incomplete because "it state[d] 'I had submitted a report to the Prosper Police Department:" with no further detail (Dkt. #8-5 at p. 3). Plaintiff concedes as much (*See* Dkt. #16 at p. 2).

[3] Plaintiff used the email address "prospercitycouncil@gmail.com." This is a parody, according to Plaintiff, because Prosper is a town, not a city (Dkt. #16 at p. 9).

(Dkt. #16 at p. 9; Dkt. #1 at ¶¶ 12, 29). Plaintiff was also "afraid that asking for [public] records using his real name could prompt some form of retaliation" (Dkt. #16 at p. 8; Dkt. #1 at ¶ 27). For instance, Plaintiff thought that making such requests could have jeopardized his wife's career because she worked for the Town and had close working relationships with its police officials (Dkt. #15 at p. 8; Dkt. #1 at ¶¶ 14–15).

On October 27, 2020, the Town responded to Plaintiff's requests by providing links to existing documents and explaining that it was not required to compile statistics or create new documents (Dkt. #1 at ¶ 32). On November 2, 2020, Plaintiff used the pseudonymous account to follow up with an unsigned email in which he explained his desire to remain anonymous and expressed dissatisfaction with the Town's response (Dkt. #1 at ¶ 34). Plaintiff sent this email to several Town officials, including Councilmember Jeff Hodges (Dkt. #1 at ¶ 34; Dkt. #8-15).

Shortly thereafter, Defendants began to investigate Plaintiff's emails by requesting that Google preserve the pseudonymous account (Dkt. #1 at ¶¶ 40–41, 43; Dkt. #8-2). The next day, Plaintiff submitted another TPIA request with a different email address[4] under a new alias, "Sam Kingston" (Dkt. #1 at ¶ 41). Through it, he requested more police records, including the personnel file for Devin Reaves, the Town Public Information Clerk (Dkt. #1 at ¶ 41; Dkt. #8 at p. 6). Again, Defendants asked Google to preserve the second pseudonymous account (Dkt. #1 at ¶ 43).

By March 2021, Defendant Boothe prepared and submitted two search warrant affidavits for records associated with the two email addresses (Dkt. #1 at ¶¶ 44–45). Defendant Boothe presented those affidavits to Judge Benjamin Smith of the 380th District Court of Collin County,

---

[4]   This time, Plaintiff used the email address "samk38043@gmail.com." His reason for selecting this name is unclear. Neither party contends that it was intended to have some parodic effect.

who issued corresponding warrants and an Order Precluding Subscriber Notification (Dkt. #1 at ¶¶ 45–58; Dkt. #8-4; Dkt. #8-5). The information obtained through these warrants led law enforcement to identify Plaintiff as the individual behind both pseudonymous identities and email accounts (Dkt. #1 at ¶¶ 59–60; Dkt. #8-5).

On July 19, 2021, Defendant Boothe submitted affidavits and a complaint seeking arrest and search warrants for Plaintiff (Dkt. #1 at ¶ 65; Dkt. #8-5). These affidavits referred to Plaintiff's use of "Geoff Hodges" and his November 2, 2020 email acknowledging that "[he] did use a false name and email account when requesting information from the city" (Dkt. #8-3; Dkt. #8-4; Dkt. #8-15 at p. 1). Defendant Boothe presented the affidavits to Judge Smith, who concluded they gave rise to probable cause to search the contents of Plaintiff's email accounts and arrest Plaintiff. Accordingly, Judge Smith issued both a search warrant and an arrest warrant for Plaintiff's residence (Dkt. #1 at ¶¶ 66–81; Dkt. #8-6; Dkt. #8-8). On July 20, 2021, Defendant Boothe arrested Plaintiff and seized items from his home (Dkt. #1 at ¶ 83).

On November 4, 2021, a Collin County Grand Jury indicted Johnson for impersonating a public servant under TEX. PENAL CODE § 37.11(a)(1), finding that Plaintiff intended to induce Town employees to submit to his pretended authority as "Geoff Hodges" when he requested public records under the TPIA (Dkt. #1 at ¶ 83; Dkt. #8-12). On November 7, 2022, however, Plaintiff moved to quash the indictment, arguing that it failed to state an offense and that the First Amendment to the United States Constitution protected his conduct (Dkt. #1 at ¶ 87). The District Attorney did not oppose the motion, and the Collin County District Court dismissed the indictment with prejudice that same day (Dkt. #1 at ¶¶ 87–88; Dkt. #8-14; Dkt. #8-16).

## II.    Procedural History

Plaintiff filed suit for the alleged constitutional violations above. Specifically, Plaintiff's Complaint brings a claim for supervisory liability against Defendant Kowalski (Dkt. #1 at p. 26), and claims for wrongful arrest, direct and retaliatory violations of free speech and the right to petition, unlawful search and seizure, and declaratory judgment against Defendants Boothe and Kowalski (Dkt. #1 at pp. 20, 22, 24). Plaintiff also brings a claim for municipal liability against Defendant Town of Prosper (Dkt. #1 at pp. 28–29). On September 19, 2023, Defendants Boothe and Kowalski filed their Rule 12(b)(6) Motion to Dismiss, arguing that Plaintiff's claims did not meet threshold plausibility requirements nor overcome Defendants' qualified immunity (Dkt. #8 at p. 2). On the same day, Defendant Town of Prosper filed its Motion to Dismiss, stating that Plaintiff's Complaint does not sufficiently plead *Monell* liability, the only theory by which Plaintiff claims municipal liability attaches (Dkt. #9 at p. 1). On October 24, 2023, Plaintiff filed his Consolidated Response, contending that the Complaint plausibly alleged every claim against Defendants Lt. Boothe and Chief Kowalski, all of which overcame Defendants' qualified immunity (Dkt. #16 at p. 8). Plaintiff's Consolidated Response also argues that he stated a valid municipal liability claim against Defendant Town of Prosper (Dkt. #16 at p. 48). On November 11, 2023, Defendants Boothe and Kowalski filed their Reply (Dkt. #19). On November 21, 2023, Defendant Town of Prosper filed its Reply (Dkt. #20). On May 9, 2024, Plaintiff filed a Notice of Supplemental Authority in favor of his Response to Defendants' Motion (Dkt. #21). On May 23, 2024, Defendants filed a Response to Plaintiff's Notice of Supplemental Authority (Dkt. #22).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R.

CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts

6

to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The events underlying this litigation stem from Plaintiff's use of pseudonyms to file TPIA requests and the Town officials' subsequent, failed prosecution of Plaintiff for criminal impersonation. Defendants' Motion introduces several issues for the Court to analyze, namely:

1. Whether Plaintiff pleaded any plausible claims against Defendant Kowalski for which there are no legally significant allegations of Defendant Kowalski's personal liability, or to which "Supervisory Liability" applies;

2. Whether Plaintiff pleaded a plausible claim for declaratory judgment relief;

3. Whether Plaintiff pleaded a plausible claim allowing recovery of punitive damages against Defendants Boothe and/or Kowalski;

4. Whether Plaintiff has pleaded any plausible Fourth Amendment illegal search or unlawful arrest claims against Defendants Boothe and/or Kowalski that overcome their qualified immunity;

5. Whether Plaintiff pleaded any plausible claims against Defendants Boothe and Kowalski that survive the independent-intermediary doctrine; and

6. Whether Plaintiff has pleaded a plausible First Amendment retaliation claim against Defendants Boothe and Kowalski that overcomes their qualified immunity.

(*See* Dkt. #8 at p. 2; Dkt. #16 at pp. 7–8).

These issues fall into two categories: Items 2, 3, and 5 hinge on the sufficiency of Plaintiff's Complaint, whereas Items 1, 4, and 6 relate to qualified immunity. For expediency's sake, the Court will first address the issues that relate to pleading sufficiency, as they require a simpler

analysis. Then, the court will examine the more complex issue of whether qualified immunity bars any of Plaintiff's claims.

As an initial matter, the Court must address the exhibits Defendants submitted alongside their Motion. In general, those exhibits are documents associated with Plaintiff's criminal investigation and prosecution. Specifically, the exhibits include: document preservation requests that Defendants submitted to Google (Dkt. #8-1; Dkt. #8-2), search warrants and returns (Dkt. #8-3; Dkt. #8-4; Dkt. #8-8); an arrest warrant for Plaintiff (Dkt. #8-6); affidavits underlying warrant applications (Dkt. #8-5; Dkt. #8-7); grand jury subpoenas (Dkt. #8-9; Dkt. #8-10; Dkt. #8-11); Plaintiff's Indictment (Dkt. #8-12); a jail records search (Dkt. #8-13); a docket sheet for Plaintiff's criminal action (Dkt. #8-14); and Plaintiff's email (Dkt. #8-15). Defendant's Motion requests that the Court "consider and/or take judicial notice" of each (Dkt. #8 at p. 3). Plaintiff objects, arguing first that that the Court may not take judicial notice of those exhibits' contents (Dkt. #16 at p. 8). Plaintiff also objects because, even if the Court can consider those exhibits, the Court "may not accept Defendants' characterizations of those records" (Dkt. #16 at pp. 8–9).

The Court will take judicial notice of Defendants' exhibits to the extent that they underpin the Court's analysis. The general rule at the Rule 12(b)(6) stage is that the Court may not consider documents extrinsic to (i.e., documents that "go outside" of) Plaintiff's Complaint. *See Rodriguez v. Rutter*, 310 Fed. App'x 623, 626 (5th Cir. 2009); *see also Baker v. Puntal*, 75 F.3d 190, 196 (5th Cir. 1996). In the Fifth Circuit, however, courts may consider additional documents, such as Defendants' exhibits. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (establishing that, on a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion

to dismiss that are central to the claim and referenced by the complaint"). Thus, the Court takes judicial notice of Defendants' exhibits that are "central" to the claims at issue and featured in Plaintiff's Complaint. *See id.*

## I. Supervisory Liability

Setting that threshold dispute aside, the Court now turns to the first substantive matter: whether Plaintiff has stated a claim for supervisory liability against Defendant Kowalski (*See* Dkt. #1 at p. 26). Defendants claim that Plaintiff has not. And even if Plaintiff did, Defendants argue that qualified immunity bars this claim (Dkt. #8 at pp. 21, 23). As explained below, the Court agrees with Defendant in part. Plaintiff's Complaint does not state a claim for supervisory liability. *See infra* at 10–15. Accordingly, it must be dismissed.[5]

### A. Supervisory Liability Legal Standard

To state a claim for supervisory liability, a plaintiff must plead that a supervisor "either (1) affirmatively participated in the acts causing the constitutional deprivation, or (2) implemented the unconstitutional policies, or (3) failed to train his subordinates regarding what resulted in the violation." *Bates v. Normand*, 703 F. Supp. 3d 775, 788 (W.D. La. 2023) (cleaned up). Plaintiff only alleges a claim for supervisory liability under the first category, also known as the "personal involvement" theory. To state a claim for that species of supervisory liability, "a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). When a supervisor issues an order to a subordinate that results in a constitutional violation, that is enough to establish the necessary

---

[5] Because Plaintiff did not plead each element of a supervisory liability claim, the Court need not address the question of whether qualified immunity bars it.

personal involvement for a supervisory liability claim. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) ("A supervisor [] issuing a direct order to a subordinate to use excessive force demonstrates both the necessary action and causality for a supervisory-liability claim.").

The causal connection is established if the "defendant set in motion a series of events that would foreseeably cause the deprivation of the plaintiff's constitutional rights." *Reagan v. Burns*, No. 3:16-CV-2590-G-BH, 2019 WL 6733023, at *9 (N.D. Tex. Oct. 30, 2019) (citing *Morris v. Dearborne*, 181 F.3d 675, 672 (5th Cir. 1999)). The "misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997).

A "supervisory official is held to a standard of deliberate indifference, which requires proof that the supervisor disregarded a known or obvious consequence of his action" that amounted to a violation of Plaintiff's constitutional rights. *Evett*, 330 F.3d at 689 (internal quotations omitted). "Deliberate indifference is a stringent standard of fault . . . ." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 463 (M.D. La. 2022) (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

### B.    Plaintiff has not plausibly pleaded supervisory liability under a theory of personal involvement as to Defendant Kowalski.

Plaintiff has not pleaded sufficient facts regarding Defendant Kowalski's supervisory liability to survive a motion to dismiss. Defendant Kowalski contends that Plaintiff did not plausibly allege Defendant Kowalski's involvement in any activities purported to have infringed on Plaintiff's constitutional rights (Dkt. #8 at p. 15). Although Defendant Kowalski concedes that he

was the Town Police Chief at the time of the alleged constitutional violations, he argues that merely being Chief does not give rise to supervisory liability where, as here, the Chief did not apply for Plaintiff's warrants and subpoenas, nor became involved in Plaintiff's arrest or later indictment (Dkt. #8 at p. 15). Defendant Kowalski also asserts that Plaintiff's Complaint did not plead a sufficient causal connection between his conduct and the alleged constitutional violation (Dkt. #8 at p. 15). Specifically, he argues that Plaintiff's Complaint does not allege "any personal involvement of [Defendant] Kowalski in any legal[ly] significant aspect of this case" (Dkt. #8 at p. 15). Plaintiff counters that its Complaint adequately demonstrates Defendant Kowalski's overt participation in the constitutional violation by alleging that he directed Defendant Boothe to conduct the investigation (Dkt. #16 at p. 47).

The parties' arguments center on whether and to what extent Defendant Kowalski directly participated in Plaintiff's arrest (*See* Dkt. #8 at p. 15; Dkt. #16 at p. 47). But their arguments put the cart before the horse. In the Court's view, Plaintiff's fate at the 12(b)(6) stage depends on the threshold sufficiency of his allegations regarding Defendant Kowalski's deliberate indifference in ratifying the arrest. *See Evett*, 330 F.3d at 689. Because Plaintiff's Complaint pleads perfunctory facts related to Defendant Kowalski's deliberate indifference, the Court cannot find that Plaintiff pleaded enough to satisfy a necessary element of the supervisory liability claim that Plaintiff pursues (*See* Dkt. #1 at ¶¶ 97, 132–33). The claim must therefore be dismissed. Still, the Court will address each element of Plaintiff's supervisory liability claim in turn.

The first element is Defendant Kowalski's personal involvement. *Evett*, 330 F.3d at 689. As to that element, the Court concludes that Plaintiff pleaded sufficient facts to show that Defendant Kowalski was personally involved in Plaintiff's arrest. Plaintiff pleaded that Defendant

Kowalski set in motion a series of events that would foreseeably cause the constitutional violations of which Plaintiff complains (*See* Dkt. #1 at ¶¶ 38–39). *See Reagan*, 2019 WL 6733023, at *9. Specifically, Plaintiff alleges that Defendant Kowalski directed Defendant Boothe to investigate Plaintiff's TPIA requests (Dkt. #1 at ¶ 38) ("[T]he Prosper Town Council . . . officially directed PPD Chief Kowalski to begin an investigation into Plaintiff's identity"). Defendant Kowalski also directed Defendant Booth to communicate with Town Council and to prepare to prosecute the author of those requests (Dkt. #1 at ¶ 39 ("Chief Kowalski . . . ordered Lt. Boothe—as then-head of the Criminal Investigations Division—to conduct an investigation into the 'Geoff Hodges' requests in order to identify and prosecute the person behind the requests.").

The next element is causation. *Evett*, 330 F.3d at 689; *Reagan*, 2019 WL 6733023, at *9. As with the first element, Plaintiff has pleaded sufficient facts to satisfy the second element. As Plaintiff argues, by ordering Defendant Boothe to investigate Plaintiff, Defendant Kowalski inserted himself into the causal chain of events that Plaintiff claims violated his constitutional rights (Dkt. #1 at ¶ 131). The Court agrees. *See Evett*, 330 F.3d at 689; *Reagan*, 2019 WL 6733023, at *9.

The third and final element is deliberate indifference. *Evett*, 330 F.3d at 689. In analyzing whether Plaintiff's Complaint states sufficient facts to satisfy this element, the viability of Plaintiff's claim unravels. Simply put, Plaintiff's allegations of deliberate indifference do not meet the "stringent standard" imposed by the law. *Brown*, 623 F.3d at 266. Plaintiff pleaded that Defendant Kowalski was deliberately indifferent when he did not stop Defendant Boothe from violating Plaintiff's constitutional rights (Dkt. #16 at p. 48; Dkt. #1 at ¶ 129).[6] Plaintiff further

---

[6]  At first blush, this fact appears to prop up supervisory liability under a "failure-to-train" theory. *See Murray*, 629 F. Supp. 3d at 463. But Plaintiff expressly denies bringing a failure-to-train claim (Dkt. #16 at p. 48). Thus, the Court is careful to assign this fact its proper weight only as it relates to supervisory liability through personal involvement, rather than a failure-to-train-theory, because Plaintiff only brings a personal involvement theory of liability.

pleaded that Defendant Kowalski knew such an omission would have functionally ratified an investigation leading to the deprivation of Plaintiff's rights (Dkt. #1 at ¶ 130) ("Defendant Kowalski, with actual and constructive knowledge, approved and ratified the unlawful and malicious investigation into Plaintiff's exercise of his First Amendment rights by asking questions of Town of Prosper officials and requesting public information."). But these arguments do not speak to deliberate indifference; instead, they speak to Defendant Kowalski's degree of involvement in the arrest. As explained above, the Court is satisfied that Plaintiff has adequately pleaded direct involvement at this juncture. *See supra* at 10–15. The more pressing question, however, is whether Defendant's Kowalski's acts were so deliberately indifferent that they transcend even "inept, erroneous, ineffective, or negligent" behavior. *Murray*, 629 F. Supp. 3d at 463. That is where Plaintiff's Complaint falls short.

Plaintiff's Complaint alleges three times that Defendant Kowalski's participation in the arrest—no matter how indirect—showed deliberate indifference (Dkt. #1 at ¶¶ 97, 132, 133). Twice, Plaintiff's Complaint merely asserts that Defendant Kowalski acted deliberately indifferent, but neither instance provides meaningful factual support (Dkt. #1 at ¶ 97 ("[Defendant Kowalski] willfully arrested and detained Plaintiff . . . with . . . deliberate indifference to [Plaintiff's] constitutional rights"); Dkt. #1 at ¶ 133 ("Defendant Kowalski acted with . . . deliberate indifference to Plaintiff's rights because of his hostility towards members of the public asking legitimate questions about the activities of the Prosper Police Department")). And on the other occasion, Plaintiff pleaded that Defendant Kowalski "acted at least with deliberate indifference to Plaintiff's constitutional rights" because he "affirmatively ordered and continued to ratify [Plaintiff's] lawful investigation . . ." (Dkt. #1 at ¶¶ 131–32) (cleaned up).

13

That is not enough. Plaintiff's Complaint might use the phrase "deliberate indifference" several times over, but merely reciting the phrase like a legal incantation without accompanying factual support has no effect. An assertion that one acted with deliberate indifference is, of course, a legal conclusion. *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014) ("[an] allegation of 'deliberate indifference' is merely a legal conclusion."). And at the 12(b)(6) stage, the Court must ignore Plaintiff's threadbare legal conclusions absent factual support. *See Twombly*, 550 U.S. at 555. Thus, Plaintiff's waving of the "deliberate indifference" wand is of no consequence here.

Further, even construing Plaintiff's factual allegations in the most favorable light, Defendant Kowalski's order and ratification of Plaintiff's investigation may, at worst, have been grossly negligent, but controlling caselaw explicitly rejects that mental state as deliberately indifferent. *See Murray*, 629 F. Supp. 3d at 460 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–85 (5th Cir. 2005)) ("deliberate indifference requires a showing of more than negligence or even gross negligence"). Because Plaintiff has not alleged sufficient facts for the Court to reasonably infer that Defendant Kowalski acted with deliberate indifference,[7] then, the Court finds that Defendant Kowalski's Motion should be **GRANTED** as to Plaintiff's supervisory liability claim.[8] *Gonzalez*, 577 F.3d at 603.

## II. Plaintiff has pleaded a plausible claim for declaratory judgment relief as to Defendant Boothe.

The Court now turns to whether Plaintiff has stated a plausible claim for a declaratory judgment to survive Defendants' 12(b)(6) Motion. He has as to Defendant Boothe. Defendants

---

[7] Recognizing the inherent difficulty of proving deliberate indifference at this stage, the Court will grant leave for Plaintiff to amend his Complaint with more facts showing deliberate indifference if further discovery renders such a claim plausible. *See Doe v. Ferguson*, 128 F.4th 727, 738 (5th Cir. 2025) (Ho, J., concurring).

[8] As a result, the Court need not analyze Defendant Kowalski's entitlement to qualified immunity from Plaintiff's supervisory liability claim. *See Flores*, 381 F.3d at 395.

correctly note that a declaratory judgment is available only if Plaintiff's substantive claims survive

and succeed (Dkt. #8 at p. 30) (citing *Reitz v. City of Abilene*, No. 1:16-CV-0181-BU, 2021 WL

5095378, at *3 n. 3 (N.D. Tex. Oct. 1, 2021)). And Plaintiff concedes as much (Dkt. #16 at p. 51).

Of course, if Defendants did not violate Plaintiff's constitutional rights, there can be no declaratory

action to the contrary. But the mere fact that the viability of one claim hinges on that of another is

no basis for dismissal. Because Plaintiff's entitlement to declaratory judgment depends on the final

disposition of his First and Fourth Amendment claims, the Court will not dismiss those claims as

to Defendant Boothe while plausibly pleaded First and Fourth Amendment claims remain alive.

*See infra* Sections IV.D, V.B. To do so would be premature and without a basis in law. The same

cannot be said regarding Defendant Kowalski, however, as those claims are no longer live. *See infra*

note 9. Consequently, Defendants' Motion to dismiss Plaintiff's claim for declaratory judgment

should be **GRANTED** as to Defendant Kowalski and **DENIED** as to Defendant Boothe.

### III.    Plaintiff has pleaded plausible claims allowing recovery of punitive damages against Defendant Boothe.

Next, the Court turns to the issue of punitive damages, which Plaintiff seeks to recover

against Defendants Boothe and Kowalski (Dkt. # 1 at p. 30). To do so, Plaintiff must prove that

Defendants acted willfully, intentionally, or with a reckless and callous indifference to Plaintiff's

civil rights. *Young v. City of New Orleans*, 751 F.2d 794, 799 (5th Cir. 1985) (citing *Smith v. Wade*,

461 U.S. 30, 56 (1983)). And to survive Defendants' 12(b)(6) Motion on this point, Plaintiff need

only have pleaded sufficient facts to show a factually plausible entitlement to punitive damages.

*See Gonzalez*, 577 F.3d at 603.

Defendants claim that that Plaintiff's Complaint contains "no credible allegation that Lt.

Boothe and/or Chief Kowalski acted willfully, intentionally, or with a reckless and callous

indifference to Plaintiff's civil rights" that would entitle Plaintiff to punitive damages (Dkt. #8 at p. 31). The Court agrees that Plaintiff is not entitled to such damages for Defendant Kowalski's conduct. *See supra* at 11–15. But Defendant Boothe misses the point. At this stage, the Court is bound to accept as true all well-pleaded facts in Plaintiff's Complaint—not to weigh factual credibility. *See MetroPCS v. MyNextCellular, LLC*, No. 4:16-CV-00283-ALM, 2016 WL 8671928, at *2 (E.D. Tex. Dec. 2, 2016). Viewing Plaintiff's Complaint in the most favorable light, then, the Court finds that Plaintiff has adequately pleaded entitlement to punitive damages insofar as his First and Fourth Amendment claims against Defendant Boothe succeed (*See* Dkt. #1 at ¶¶ 68, 78, 97, 103, 105, 123, 133). Thus, Defendants' Motion to dismiss Plaintiff's claims for punitive damages should be **GRANTED** only as to Plaintiff's claims against Defendant Kowalski and **DENIED** as to all others.

*     *     *

Having decided the discrete issues presented above, the remainder of the Court's task is weighty. That is, the Court must decide whether the crux of Plaintiff's lawsuit—his First and Fourth Amendment violation claims—is viable. The Court's analysis of these questions proceeds in two phases, each of which involves two questions. In the first phase, the Court addresses Plaintiff's claim that Defendant Boothe[9] violated his rights under the Fourth Amendment. That

---

[9] Having found that Defendant Kowalski cannot be liable under a supervisory liability theory as currently pleaded, the Court need not consider his potential liability under Plaintiff's constitutional claims. The reason is two-fold: Plaintiff's Complaint sued Defendant Kowalski in his individual capacity alone (Dkt. #1 at p. 3), and all constitutional claims against Defendant Kowalski treat him and Defendant Boothe as a single entity (*See* Dkt. #1). Put differently, the only pleaded conduct unique to Defendant Kowalski that could plausibly support either constitutional violation is that he, as a supervisor, ratified Plaintiff's arrest (*See, e.g.*, Dkt. #1 at ¶¶ 130–31). Otherwise, Plaintiff treats them alike (*See, e.g.*, Dkt. #1 at ¶¶ 95, 103, 121). But Defendant's Kowalski's actions as a supervisor cannot prop up Plaintiff's constitutional claims when, as here, the Court has found that supervisory liability did not attach. *See supra* at 9–15.

inquiry involves two questions: (1) whether Plaintiff pleaded sufficient facts to state a claim; and (2) whether qualified immunity bars Plaintiff's claim. In the second phase, the Court asks the same questions, but as to Plaintiff's First Amendment claims.

## IV.    Plaintiff's Fourth Amendment Claims

The Court begins with the Fourth Amendment inquiry before it. In performing that inquiry, the Court evaluates first whether Defendants had probable cause to support Plaintiff's arrest—a determination central to the qualified immunity analysis for Plaintiff's Fourth Amendment claim. Because the factual bases for the alleged constitutional violation overlap substantially between the analyses for probable cause, Plaintiff's *Malley* claim, and Plaintiff's *Franks* claim, the Court will address probable cause first. Resolving probable cause will clarify the factual and legal context in which the arrest occurred, thereby informing the *Malley* and *Franks* analyses that follow.

### A.    Probable Cause Legal Standard

"Under the Fourth Amendment, an arrest is reasonable if supported by probable cause." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2006) (citing *Atwater v. City of Lago Vista*, 195 F.3d 242, 244 (5th Cir. 1999)). Thus, to support a claim for unlawful arrest, Plaintiff must show that he was arrested without probable cause. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 481 (5th Cir. 1999). The "touchstone" of Fourth Amendment analysis "is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977). "Reasonableness, of course, depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers," *id*. at 109 (internal quotation marks omitted), and "is measured in objective terms by examining the totality of the circumstances." *Ohio*, 519 U.S. at 39.

**B.    Defendant Boothe lacked probable cause to search and arrest Plaintiff for impersonating a public official.**

Plaintiff claims that Defendant Boothe violated his Fourth Amendment rights in three ways: (1) wrongful arrest; (2) unlawful search; and (3) unlawful seizure (Dkt. #1 at pp. 20, 24). Defendant Boothe disputes the allegations in full and contend that Plaintiff's claim should be dismissed because "probable cause for search of [Plaintiff's] property then his arrest was determined by a State District Court Judge and again when the Plaintiff was indicted by a Grand Jury" (Dkt. #8 at p. 13). Plaintiff contends, however, that no reasonable officer could have found probable cause to arrest Plaintiff "under a completely novel and untenable application of the impersonation statute . . . to Plaintiff's lawful request for records" (Dkt. #16 at p. 16). Defendant Boothe characterizes Plaintiff's argument as an academic attempt to reframe Plaintiff's criminal conduct by "contextualiz[ing]" it as parody, which flies in the face of real-world experience and the law (Dkt. #19 at pp. 1–2). The Court agrees with Plaintiff. Under the totality of the circumstances, neither Defendant Boothe nor any reasonable officer could have believed that probable cause existed to arrest Plaintiff for violating Texas's impersonation statute, TEX. PENAL CODE § 37.11(a)(1). *See Jackson*, 959 F.3d at 200–01.

The Fourth Amendment to the United States Constitution guarantees the right of all persons to be free from unreasonable searches and seizures and demands that probable cause substantiate all warrants. U.S. CONST. amend. IV. Probable cause exists when "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [one] has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). In determining whether probable cause exists, courts consider the totality of

the circumstances, including the expertise of law enforcement officials. *See United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999) (citing *United States v. Ortiz*, 422 U.S. 891, 897 (1975)); *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). To support a finding of probable cause, "a court is required only to find a basis for an officer to believe to a 'fair probability' that an offense occurred." *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (citing *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)).

In this case, a careful review of the search and arrest warrant affidavits indicates that a reasonable officer could not have believed that Plaintiff violated, was about to violate, or was violating TEX. PENAL CODE § 37.11(a)(1) for two reasons. First, Plaintiff did not *actually* impersonate Jeff Hodges. Second, Plaintiff did not possess the specific intent to impersonate anyone—let alone Jeff Hodges.

As to the first reason, Plaintiff did not actually impersonate Jeff Hodges under the letter of Texas law. Nor is there any evidence to suggest that he was going to actually impersonate Jeff Hodges. The first element of the offense requires that a person "impersonate[] a public servant." TEX. PENAL CODE § 37.11(a)(1)(1). Impersonation in this context means that an alleged impersonator takes on a "false assumption or pretension . . . that he is a public servant . . . ." *Tovar v. State*, 777 S.W.2d 481, 489 (Tex. App.—Corpus Christi 1989, pet. ref'd), *abrogated on other grounds*, *Cornwell v. State*, 471 S.W.3d 458, 464 (Tex. Crim. App. 2015)). Defendants claim that Defendant Boothe's affidavit sets out the reasons that Plaintiff actually impersonated Jeff Hodges. As an example, Plaintiff requested public information using the pseudonymous email address, "prospercitycouncil@gmail.com," and "consistently identified himself using a modified name resembling that of Town of Prosper Councilman Jeff Hodges, who was and still is, a current public

19

servant and elected official . . ." (Dkt. #8 at p. 10; Dkt. #8-5 at p. 2). Plaintiff, on the other hand, asserts that his conduct could not have amounted to actual impersonation because he did not "adopt[] the actual identity of someone, typically by taking on their name, persona, title, or distinguishing characteristics such as dress or official markings" (Dkt. #16 at p. 18).

The Court concludes that neither Defendant Boothe nor any reasonable officer with comparable experience could have believed that Plaintiff *actually* impersonated Jeff Hodges for three reasons, each of which are substantiated by Defendant Boothe's own search warrant affidavit. First, Defendant Boothe's records check undercuts the argument that he could have reasonably interpreted Plaintiff's distorted name as a literal substitute for Jeff Hodges. The affidavit acknowledges that "[a] records check of [Plaintiff's modified] name through the Texas driver's license database showed that the name d[id] not exist," which should have assuaged any reasonable concerns Defendant Boothe may have had (Dkt. #8-4 at p. 2).

Second, Defendant Boothe's affidavit states that "the Chief of Police-Doug Kowalski contacted Councilman Hodges directly to clarify what records were being requested" (Dkt. #8-4 at p. 2). Tellingly, when Defendant Kowalski noticed the misspelling, he contacted Jeff Hodges—not Plaintiff—to confirm the requestor's identity (Dkt. #8 at p. 2). That fact alone, let alone the totality of the affidavit's facts, undermines Defendant Boothe's argument on this point.

Third, Plaintiff "identified himself using a *modified* name resembling that of Councilman Jeff Hodges," not Jeff Hodges' actual name (Dkt. #8-4 at p. 2). Defendant Boothe asserts that this argument is of no moment, in part, because Plaintiff's use of a slightly modified name illustrates the "blatant stupidity which frequently accompanies criminal conduct," and not any cleverness on Plaintiff's behalf (Dkt. #19 at p. 2). But Defendant Boothe cannot dispute that "Geoff" is not

"Jeff." Though they may sound the same, they are indisputably different as *written words*, the medium through which Defendant Boothe and Town officials learned about Plaintiff's pseudonym. Put differently, "Geoff" and "Jeff" sound identical but read differently, yet Defendant Boothe alleges that seeing "Geoff", rather than hearing it, would have misled a reasonable person to believe that Plaintiff was actually Jeff Hodges. That is a bridge too far. In the Court's view, Plaintiff's altering of Jeff Hodges' written name should have signaled a departure from literal identity to any reasonable officer—certainly to one as experienced as Defendant Boothe, who "has been a Licensed Peace Officer since 1984" (Dkt. #8 at p. 5).

Defendant Boothe's argument that probable cause supported his conduct falls short for yet another reason: no facts suggest that Plaintiff possessed the specific intent to impersonate Jeff Hodges. The second element of the offense of impersonation under Texas law is that the defendant "knowingly purports to exercise, without legal authority, any function of a public servant or of a public office . . . ." TEX. PENAL CODE § 37.11(a)(1)(2). In other words, the alleged impersonator must possess the "specific intent for there to be a violation under Section 37.11(a)(1)." *Cornwell*, 471 S.W.3d at 464. And "while law enforcement personnel 'may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'" *Evett*, 330 F.3d at 688 (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1998)). As with the first element, the Court finds that neither Defendant Boothe nor any reasonable officer under the circumstances could have concluded that Plaintiff harbored specific intent to impersonate a public official. *See Cornwell*, 471 S.W.3d at 464.

The most compelling reason underlying this conclusion is that, by submitting requests under the TPIA, Plaintiff exercised his right to use a lawful, *public* procedure and denounced any

resemblance to Jeff Hodges shortly thereafter (Dkt. #16 at p. 10). To violate the statute, Plaintiff must have attempted to wield Jeff Hodges' *official* authority as a Councilmember, not the *public* authority statutorily granted to Plaintiff. Defendant Boothe's argument that submitting TPIA requests under a pseudonym violates the statute fails, then, because those requests do not in any way implicate, much less require, official authority. *See Jackson v. Tex. S. Univ.*, No. CIV.A. H-11-4092, 2013 WL 593412, at *7 (S.D. Tex. Feb. 14, 2013) (quoting *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 355–56 (Tex. 2000)) (the "Texas Legislature enacted the TPIA in 1973 to provide public access at all times to complete information about the affairs of government and the official acts of public officials and employees.") (quotations omitted) (emphasis added). And to the extent that a reasonable officer could have mistakenly understood Plaintiff's projected authority, Plaintiff's later email to the Town Council explaining that he used a "fake" name and email address "to remain anonymous and protect [himself] from retaliation" should have clarified that Plaintiff did not specifically intend to wield pretended official authority (Dkt. #1 at ¶ 34; Dkt. #8-15 at p. 1). This is particularly true when, as here, Defendant Boothe should have noticed that the email distinguishing Plaintiff's actual identity from his projected identity was sent to Jeff Hodges, the purported subject of the impersonation (Dkt. #1 at ¶ 34; Dkt. #8-15 at p. 1).

To Defendant Boothe's point, the Court recognizes that its finding of no probable cause contradicts that of the Collin County State District Court Judge and Grand Jury (Dkt. #8 at pp. 18–19). And while "a magistrate judge's determination on probable cause is given great deference," *United States v. Trejo*, 492 F. Supp. 2d 659, 674 (W.D. Tex. 2007), "[d]eference to the magistrate . . . is not boundless." *Leon*, 468 U.S. at 914. Under these circumstances, the Court cannot find probable cause when the totality of the circumstances should have suggested to Town

22

leadership and police that there was no "fair probability" that Plaintiff violated TEX. PENAL CODE § 37.11(a)(1)(a). *See Piazza v. Mayne*, 217 F.3d at 245–46.

### C. Plaintiff has pleaded plausible claims against Defendant Boothe that survive the independent-intermediary doctrine.

Having determined that Defendant Boothe lacked probable cause, the Court turns to the first two of Plaintiff's three claims rooted in the Fourth Amendment—Plaintiff's *Malley* and *Franks* claims. Defendant Boothe argues that both claims are fatally flawed. They are not. They should survive 12(b)(6).

Fundamentally, a *Malley* and *Franks* claims concern the "independent intermediary" doctrine, which defendants may invoke against such claims to avoid answering for conduct that otherwise violates the Constitution. The independent intermediary doctrine applies to claims that a search or detention occurred without legal process. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548 (5th Cir. 2016); *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). Under this doctrine, "'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011) (quoting *Cuadra*, 626 F.3d at 813). But "[d]eference to the magistrate . . . is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984). If "the deliberations of [the] intermediary were in some way tainted by the actions of the defendant," the defendant can still be liable. *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022).

A plaintiff may show that an independent intermediary was tainted by proving one of two claims—a *Malley* or *Franks* claim.[10] *See Malley v. Briggs*, 475 U.S. 335 (1986); *Franks v. Delaware*, 438 U.S. 154 (1978); *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (holding that a plaintiff cannot hold an officer liable under *Malley* when the officer has also committed a *Franks* violation). A *Malley* claim alleges that an officer "tainted" an intermediary by submitting "[a] warrant application [] so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 344–45. Under those circumstances, qualified immunity would no longer shield the officer from liability. *Id.*

A *Franks* claim, in contrast, alleges that an intermediary was tainted in evaluating an alleged Fourth Amendment violation because "an officer intentionally, or with reckless disregard for the truth, include[d] a false statement in a warrant application." *Kohler*, 470 F.3d at 1113 (citing *Franks*, 438 U.S. at 154). To prove a *Franks* claim, a plaintiff must "show that the official's malicious motive led the official to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). At this stage of litigation, "'mere allegations of taint' . . . may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 337 (E.D. Tex. 2021) (quoting *McLin*, 866 F.3d at 690).

---

[10] The Court notes that, ultimately, *Malley* and *Franks* claims are mutually exclusive. That is, a Plaintiff may not succeed on *both* a *Malley* and a *Franks* claim. *See, e.g., Blake v. Lambert*, 921 F.3d 215, 218 (5th Cir. 2019) (remarking that a *Franks* claim is "incompatible" with a *Malley* claim). A Plaintiff remains free, however, to pursue both a *Malley* and a *Franks* theory at the pleading stage. *See, e.g., English v. City of Waco, Tex.*, No. 1:17-CV-219-ADA-JCM, 2024 WL 3982738, at *4–5 (W.D. Tex. July 15, 2024); *Nevarez v. Coleman*, No. CV 21-1855, 2022 WL 2528237, at *5–6 (E.D. La. July 7, 2022).

Here, Plaintiff has sufficiently pleaded allegations that the intermediaries in this case—a State District Court Judge and Grand Jury—were tainted under both *Malley* and *Franks* theories when evaluating probable cause for the offense of impersonating a public servant. *See* TEX. PENAL CODE § 37.11(a)(1). The elements of that offense are:

(a)    A person commits [the] offense if the person:

   (1)    impersonates a public servant with intent to induce another to submit to the person's pretended official authority or to rely on the person's pretended official acts; or

   (2)    knowingly purports to exercise, without legal authority, any function of a public servant or of a public office, including that of a judge and court.

TEX. PENAL CODE § 37.11(a)(1).

With this in mind, the Court will now consider each of the affidavits in turn—first as they relate to Plaintiff's *Malley* claim, then as they relate to Plaintiff's *Franks* claim, to determine whether the independent intermediary doctrine bars Plaintiff's claims. It does not.

### 1.    Plaintiff's pleaded facts violate the Fourth Amendment.

Plaintiff claims that Defendants violated his Fourth Amendment right from unlawful search and seizure when they:

   (1)    knowingly prepared a facially deficient probable cause affidavit;

   (2)    knowingly prepared a probable cause affidavit which withheld exculpatory information;

   (3)    relying upon the facially deficient and misleading probable cause affidavit, sought and obtained a facially deficient arrest warrant under a pretextual application of Texas Penal Code § 37.11; and

   (4)    knowingly arrested and detained Plaintiff without probable cause and against his will, based on a knowing or deliberately indifferent wrongful application of Texas Penal Code § 37.11.

(Dkt. #1 at ¶ 96).

25

Plaintiff's Complaint adequately states a claim for a Fourth Amendment violation based on unlawful arrest, search, and seizure at this juncture. Plaintiff alleged that Defendant Boothe wrongfully obtained a search warrant for the contents of the "prospercitycouncil@gmail.com" email address by attaching a facially deficient affidavit (Dkt. #1 at ¶ 45).[11] Plaintiff further alleged that the deficient affidavit "omitted key, exonerative details which would have made a reasonable official conclude that [Defendant] Boothe's investigation was baseless" (Dkt. #1 at ¶ 45). Specifically, the affidavit omitted that Plaintiff requested public government records under the TPIA, creating a narrative that Plaintiff sought information to which he was not entitled (Dkt. #1 at ¶ 46). Plaintiff then explains in detail how Defendant Boothe withheld exculpatory information by omitting language in the TPIA and any identified "pretended official authority" wielded by Plaintiff (Dkt. #1 at ¶¶ 50–52). Plaintiff then asserts that Judge Smith relied on the deficient probable cause affidavits to issue search and arrest warrants (Dkt. #1 at ¶¶ 52, 58). Finally, Plaintiff pleaded that Defendant Boothe knowingly and unconstitutionally arrested and detained Plaintiff after obtaining unlawful search and arrest warrants (Dkt. #1 at ¶¶ 65, 68). When viewing the facts as alleged in the light most favorable to Plaintiff, as the Court is obligated to do, the Court finds that Plaintiff has pleaded sufficient facts to reasonably infer a Fourth Amendment violation.

### 2.    Plaintiff has plausibly pleaded a *Malley* claim.

As to the *Malley* claim, Plaintiff contends that the warrant affidavits reviewed by the State District Judge lacked sufficient indicia of probable cause such that "a reasonably well-trained officer in [the same] position would have . . . not applied for the warrant" (Dkt. #16 at p. 26)

---

[11] The Court notes that the facts underpinning its probable cause, *Malley*, and *Franks* analyses are equally germane here, as each analysis focuses on the absence of probable cause. *See supra* Sections IV.B–C. To avoid exhaustive recitations of repetitive facts, however, the Court will point only to exemplary facts relating to each element of a Fourth Amendment violation.

(quoting *Malley*, 475 U.S. at 345). To start, the March 5, 2021 warrant affidavit, in Plaintiff's view, "provided insufficient factual detail to show a probability or substantial chance each element of the offense was met" (Dkt. #16 at p. 27; Dkt. #8-2 at p. 2). That is because Defendant Boothe acknowledged not only Plaintiff's use of a *modified* name, "Geoff Hodges," but also that the pseudonym did not appear in the Texas driver's license database, foreclosing the argument that Plaintiff ever actually impersonated Council Member Jeff Hodges (Dkt. #1 at p. 15). Defendant Boothe also relied on a fictitious email to support probable cause even though "the [Texas Public Information Act] does not require that requestors supply any name at all, let alone a real name, to make a request for public records" (Dkt. #1 at p. 16).

The March 8, 2021 search warrant affidavit for the contents of the fictitious "samk38043@gmail.com" email is subject to similar criticism. Other than stating that the email account "was created and is being used by the same unknown suspect in furtherance of the same offense of Impersonating a Public Servant to continue the attempts to obtain official government records," the affidavit merely links the "samk38043" account to the "prospercitycouncil" account—it does not explain how the former was used to further the offense committed by the latter (Dkt. #16 at p. 28).

In the same vein, the July 19, 2021 search warrant affidavits never precisely explained "how Plaintiff's use of [the samk38043] email supported [Defendant Boothe's] claim of probable cause" (Dkt. #1 at p. 73; *See* Dkt. #8-5 at p. 4). As an example, Defendant Boothe "did not allege that the names 'Sam King' or 'Sam Kingston' were the names of any current or former Town of Prosper official, or that Plaintiff claimed any official authority when corresponding with any Town of Prosper official using that name and email" (Dkt. #1 at p. 16).

Finally, Plaintiff alleges that the indictment returned by the Collin County Grand Jury (the other intermediary) was facially invalid because the judge presiding over Plaintiff's criminal case quashed the indictment (Dkt. #1 at p. 19). Plaintiff's argument stands at odds with well-established Fifth Circuit precedent on this point. *See e.g., Harris v. Harris Cnty.*, No. CV H02-2698, 2006 WL 8451605, at *6 (S.D. Tex. Aug. 31, 2006) ("The fact that the criminal charges were subsequently dismissed does not negate the existence of probable cause at the time of the arrest and preferring of charges"); *Allen v. Normand*, No. CIV.A. 09-2825, 2009 WL 2448253, at *13 (E.D. La. Aug. 7, 2009) (finding that later dismissal of a charge does not vitiate probable cause at the time of arrest).

Construing the Complaint in the light most favorable to the Plaintiff, however, the Court finds that Plaintiff has plausibly pleaded other facts sufficient to support a *Malley* claim. In other words, the Court agrees with Plaintiff that a "reasonably well-trained officer" could not have applied for the search and arrest warrants after a cursory review of the affidavits because they each lacked sufficient indicia of probable cause. *See Malley*, 475 U.S. at 345. For instance, the March 5, 2021 affidavit's statement that Plaintiff's pseudonym did not appear in the Texas license database should have alerted a reasonable officer as to its factual inadequacy (Dkt. #8-2 at p. 2). The March 8, 2021 search warrant affidavit did not explain how the "samk38043" account was used to meet the elements of TEX. PENAL CODE § 37.11(a)(1) (*See* Dkt. #8-4 at pp. 1–2). And the July 19, 2021 search warrant affidavit did not explain how any variant of the name "Sam King" could support probable cause for impersonation of an official named "Jeff Hodges" (Dkt. #8-5 at p. 4). Each of these affidavits, taken alone, should have signaled to a reasonable officer that probable cause was lacking. But that is even more evident when taken together. Thus, Defendants' Motion to dismiss Plaintiff's *Malley* claim should be **DENIED**.

### 3.    Plaintiff has plausibly pleaded a *Franks* claim.

As to the *Franks* claim, Plaintiff contends that Defendant Boothe "willfully included false statements and omitted exonerative information essential to the probable cause analysis," and that "[r]eviewing the material omissions and falsehoods in Defendants' affidavits reveals that Defendant [Boothe] had no reasonable basis to believe Plaintiff possessed the requisite intent necessary to make out a violation of Penal Code § 37.11(a)(1)" (Dkt. #16 at pp. 31–32). Just as with Plaintiff's *Malley* claim, the Court will consider each affidavit and the Collin County Grand Jury indictment in turn.

The March 5 and 8, 2021 search warrant affidavits withheld the material fact that Plaintiff lawfully sought public records under the TPIA (Dkt. #1 at ¶¶ 45–58; *see* Dkt. 8-3 at p. 2; Dkt. #8-4 at p. 2). Given that omission, the warrant affidavits cast Plaintiff's attempt to request records as unlawful when, in fact, Plaintiff followed a lawful process to request those records. These affidavits then characterize Plaintiff—falsely, in Plaintiff's view—as "caus[ing] agents of the Town to act and cause the release of information upon this purported official capacity" (Dkt. #8-3 at p. 2; Dkt. #8-4 at p. 2). But Plaintiff's request did not require that he wield any "purported official capacity," and his requests could not "cause the release" of *non-public* information, as the TPIA allows Plaintiff to access only information that is already public. TEX. GOVT. CODE. ANN. § 552.101 (giving the public the right to obtain information in government records unless the "information [is] considered to be confidential by law, either constitutional, statutory, or by judicial decision")

The July 19, 2021 arrest warrant affidavit similarly omits material information. For example, Defendant Boothe listed three public record requests indicating that Plaintiff "consistently identified himself using a modified name resembling that of Town of Prosper Councilman Jeff Hodges" (Dkt. #8-5 at p. 3; Dkt. #8-7 at p. 4). But the Plaintiff used this name

29

only to file requests and never used the name again in correspondence with town officials (*See* Dkt. #1 at ¶¶ 31, 48, 79). Moreover, Defendant Boothe withheld that Plaintiff voluntarily communicated to the Town Council and leadership that he used this pseudonym to remain anonymous (*See* Dkt. #1 at ¶ 78).

Along similar lines, Plaintiff contends that Defendant Boothe's actions tainted the Collin County Grand Jury's November 4, 2021 indictment for the impersonation offense, leaving the causal chain intact (Dkt. #16 at p. 40). In doing so, Plaintiff's claims that Defendant Boothe was "the sole witness produced to the grand jury," to whom he testified regarding "the same basic, tainted set of facts that he alleged in his previous warrant affidavits, which included the same material omissions and misrepresentations that induced District Judge Smith to sign off on the search and arrest warrants" (Dkt. #1 at ¶¶ 84–85). Plaintiff's allegations are sufficient to plead "tainting" that overcomes the independent-intermediary doctrine at this stage. *See Wilson*, 33 F.4th at 212 (quoting *McLin*, 866 F.3d at 690) ("'mere allegations of taint' . . . are adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference").

Not only has Plaintiff adequately pleaded that Defendant Boothe's affidavits offered falsehoods and material omissions in an attempt to obtain probable cause, but he also pleaded sufficient facts that Defendant Boothe did so intentionally, knowingly, or with reckless disregard for the truth (*See* Dkt. #1 at ¶¶ 45–58, 65–81, 96). Reviewing these allegations in the light most favorable to Plaintiff, the Court concludes that Defendants' Motion to dismiss Plaintiff's *Franks* claim should be **DENIED**.

**D.** **Plaintiff has pleaded a plausible Fourth Amendment claim against Defendant Boothe that overcomes his qualified immunity.**

Having resolved the preceding issues, the Court will now address whether Defendant Boothe is entitled to qualified immunity, which entails a two-pronged inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court finds that Defendant Boothe is entitled to qualified immunity as to Plaintiff's First Amendment claim but not his Fourth Amendment claim.

**1.** **Qualified Immunity Legal Standard**

To establish liability under Section 1983, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. First, a court must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, if a constitutional right was violated, a court then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

The law is clearly established if a reasonable official would understand that his conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The official's subjective

31

motivation is irrelevant to the qualified immunity defense except as far as it is relevant to the underlying constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" such that every "reasonable official would have understood that what he is doing violates that right." *Creighton,* 483 U.S. at 640. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id.*; *Malley*, 475 U.S. at 341. The Supreme Court instructs district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236–37.

### 2.    Defendant Boothe violated Plaintiff's clearly established rights.

The parties do not dispute that, under Fifth Circuit precedent, it is clearly established that a plaintiff must show a lack of probable cause to succeed on claims for false arrest, unreasonable seizure, and false imprisonment (*See* Dkt. #8 at p. 24; Dkt. #16 at pp. 15–16). *See, e.g.*, *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001); *Haggerty v. Texas Southern University*, 391 F.3d 653, 656 (5th Cir. 2004). Relatedly, it is "clearly established that a [person's] Fourth Amendment rights are violated if: (1) the affiant, in support of the warrant, includes a 'false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey*, 901 F.3d at 494 (quoting *Franks*, 438 U.S. at 155–56) (cleaned up).

Here, the parties do not cite factually analogous caselaw supporting the proposition that the lineage of TPIA cases up to July 10, 2021 compelled a particular legal conclusion (*See generally*, Dkt. #8; Dkt. 16). Defendant Boothe concedes as much, characterizing the law on this point as

"evolving and certainly unclear" (Dkt. #19 at p. 7).[12] In such cases, the Court must consider whether clearly established law would have made it apparent that the affidavits at issue supported probable cause for Plaintiff's arrest—effectively collapsing the qualified immunity inquiry into the probable cause analysis. If probable cause existed, the arrest was lawful under clearly established law; if it did not, the arrest was unconstitutional. *See, e.g.*, *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2018) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007)); *Haggerty v. Texas Southern University*, 391 F.3d 653, 656 (5th Cir. 2004). As explained above, the Court finds that law enforcement's search, seizure, and arrest lacked probable cause. *See supra* Section IV.B. Therefore, Defendant Boothe violated clearly established law that any reasonable officer would have known when he arrested Plaintiff under the alleged facts, and he is not entitled to qualified immunity as to this claim. *See, e.g.*, *Martinez-Aguero*, 459 F.3d at 625. Accordingly, Defendants' Motion to dismiss this claim should be **DENIED**.

## V.    Plaintiff's First Amendment Claim

Having determined that Plaintiff's Fourth Amendment claim should survive Defendant Boothe's Rule 12(b)(6) Motion, the Court turns to the final phase of its analysis. That is, whether Plaintiff has stated a plausible claim for First Amendment retaliation and whether qualified immunity bars that claim. As discussed below, Plaintiff's claim should survive.[13]

---

[12]  The Court is bound to disregard Defendant Boothe's reliance on *Grisham*, as it is rooted in caselaw born *years after* Plaintiff's July 20, 2021 arrest. *See Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) ("we ask whether the right in question was 'clearly established' *at the time of the alleged violation*") (emphasis added); *Davidson v. City of Stafford*, 848 F.3d 384, 393 (5th Cir. 2017) (evaluating the state of clearly established law at the time of plaintiff's arrest).

[13]  The Court notes that Plaintiff purports to have raised a First Amendment retaliation claim under two theories (*See* Dkt. #16 at p. 35). The first is a direct infringement theory (*See* Dkt. #16 at p. 35; Dkt. #1 at pp. 22–24). The second is a retaliatory arrest theory (Dkt. #16 at p. 35; Dkt. #1 at pp. 22–24). Plaintiff claims that Defendants' Motion does not challenge the direct infringement theory and instead only challenges the retaliatory arrest theory (Dkt. #16 at p. 35). The Court agrees (*See generally*, Dkt. #8; Dkt. #19). Accordingly, only Plaintiff's retaliatory arrest theory is properly before the Court.

## A.    First Amendment Retaliation Legal Standard

To plead a First Amendment retaliation claim in the criminal prosecution context, a plaintiff must plead sufficient facts to satisfy three elements: (1) he was engaged in a constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002); *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005). In addition, the plaintiff must establish each element of common law malicious prosecution. *Tejada*, 290 F.3d at 260 (citing *Johnson v. La. Dep't of Agric.*, 18 F.3d 318, 320 (5th Cir. 1994)). "To defeat a plaintiff's *prima facie* First Amendment retaliation claim, a defendant must show that [he] would have taken the same action regardless of the plaintiff's protected conduct." *Dickinson Leisure Indus., Inc. v. City of Dickinson*, 329 F. Supp. 2d 835, 846-47 (S.D. Tex. 2004) (cleaned up).

## B.    Plaintiff has pleaded a plausible First Amendment claim against Defendant Boothe that overcomes his qualified immunity.

Plaintiff claims that Defendant Boothe retaliated against him with criminal prosecution simply because Plaintiff engaged in protected First Amendment conduct, including:

(1)    making inquiries to Town of Prosper officials on matters of public concern;

(2)    making said inquiries using an anonymous email address;

(3)    asking for public records using the lawful process created by the Texas Public Information Act, and corresponding with Town of Prosper officials about those requests; and

(4)    creating a website entitled Prosper Police Oversight to publish the records he had lawfully obtained.

(Dkt. #1 at ¶ 107).

Plaintiff's allegations name four independent acts, each of which the Court must evaluate as bases for a First Amendment violation. Of course, these acts only give rise to a retaliation claim if the First Amendment protects them. *Keenan*, 290 F.3d at 258. It does.

### 1.    Plaintiff was engaged in constitutionally protected activity.

As a threshold issue, the Court must determine which alleged acts, if any, are protected speech. *See Keenan*, 290 F.3d at 258. Plaintiff argues that Defendant Boothe cannot—and in fact, did not—dispute that an anonymous request for information from the Town and publication of its results are constitutionally protected activity (Dkt. #16 at p. 43). Be that as it may, the Court will nonetheless consider whether the four alleged acts are constitutionally protected.

The Court starts with the first act: "making inquiries to Town of Prosper officials on matters of public concern" (Dkt. #1 at ¶ 107). Plaintiff insists that the First Amendment protects TPIA requests because they are lawful (Dkt. #16 at p. 43). Plaintiff is wrong. That an act is lawful does not guarantee that it is constitutionally protected. In fact, the Supreme Court has "repeatedly made clear that there is no constitutional right to obtain all the information provided by [Freedom of Information Act] laws." *McBurney v. Young*, 569 U.S. 221, 232 (2013) (collecting cases). The TPIA is one such law. Indeed, since *McBurney*, this District has extended that principle to TPIA requests. *See Dallas Police & Fire Pension Sys. v. Alexander*, No. 417-CV-00631-ALM-KPJ, 2020 WL 9936144, at *11 (E.D. Tex. Mar. 26, 2020) ("TPIA requests are not constitutionally protected speech . . . Rather, [plaintiff's] TPIA requests are statutorily protected requests in Texas. Section 1983 does not protect [plaintiff's] state rights under Texas statutes."). So, lawful as Plaintiff's TPIA requests may be, they are protected by *Texas statute*—not the U.S. Constitution. *See id.* Plaintiff's attempt to recast the Constitution as a Public Information Act by bringing TPIA requests

within the scope of the First Amendment therefore fails. *See id.* at 10. Accordingly, Plaintiff's TPIA requests cannot serve as the basis for his retaliation claim.

The second act Plaintiff claims constitutional protection for is "making [TPIA requests] using an *anonymous* email address" (Dkt. #1 at ¶ 107) (emphasis added). The crux of Plaintiff's argument here is not simply that he made a TPIA request, but that he did so *anonymously*. Plaintiff claims that the First Amendment protects this conduct because its core principles apply to anonymous speech (Dkt. #16 at p. 42). The Court agrees. "As a general proposition, anonymous speech is protected by the First Amendment." *Justice For All v. Faulkner*, 410 F.3d 760, 764 (5th Cir. 2005) (collecting cases in which the Supreme Court has upheld First Amendment protection of anonymous speech). To be sure, "free speech was originally understood to include the right to speak without being known. Consistent with this original understanding, the Supreme Court has upheld the right by striking down laws banning anonymous speech." *Novak v. City of Parma*, 932 F.3d 421, 434 (6th Cir. 2019) (citing *McIntyre v. Ohio elections Comm'n*, 514 U.S. 334 (1995)).

Here, Plaintiff engaged in protected speech when he anonymously asked the Town for information and thereafter criticized the Town's response in a website, both of which were motivated by the fear of reprisal (*See* Dkt. #16 at p. 44; Dkt. #1 at ¶¶ 14–22). Plaintiff's use of a pseudonym has no bearing on whether his speech is protected. *See Pac. Gas & Elec. V. Pub. Utils. Com'n of Cal.*, 475 U.S. 1, 8 (1986). Thus, the Court finds that this conduct amounts to constitutionally protected speech.

The third act is "asking for public records using the lawful process created by the Texas Public Information Act, and corresponding with Town of Prosper officials about those requests" (Dkt. #1 at ¶ 107). Though presented as a single act, this conduct consists of two sub-acts:

(1) asking for public records via the TPIA, and (2) corresponding with Town officials. Regarding the first, as the Court has already stated, the First Amendment does not protect TPIA requests. *See supra* at 34–35. As to the second, the Court agrees that corresponding with Town police about their responses to Plaintiff's TPIA requests amounts to protected speech.

Town police statistics reflect political and social dynamics in the community and, therefore, qualify as a "matter of public concern" under First Amendment protection. Speech on a matter of public concern is speech "relating to any matter of political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). The law holds this kind of speech in high esteem and, therefore, grants it special protection. *Buehler*, 2014 WL 12776539, at *5 ("[s]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection") (quoting *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)). Thus, the Court finds that Plaintiff's correspondence with Town officials is protected speech.

The final act is "creating a website entitled Prosper Police Oversight to publish the records he had lawfully obtained" (Dkt. #1 at ¶ 107). Plaintiff's posting of the Town's police records on the internet, a nascent medium, does not place that conduct outside the ambit of the First Amendment. *See Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011) (citing *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952)) ("whatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears"). The Court therefore concludes that Plaintiff's publishing of the Town's police records constitutes protected speech.

### 2.    Defendant Boothe's "adverse action" chilled Plaintiff from exercising his constitutional rights.

Next, the Court must determine whether Plaintiff suffered an adverse government action that chilled him from continuing to engage in the constitutionally protected forms of speech identified above. *See Keenan*, 290 F.3d at 258. There can be no question; he did. His government arrested him for making anonymous TPIA inquiries, corresponding with Town officials about those requests, and publishing to a website the responsive police records he had obtained (Dkt. #16 at pp. 43–44). That arrest is an adverse action. *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (an arrest is "easy to identify" as an adverse action). And no doubt, it chilled Plaintiff from "continuing to engage in that activity." *See Keenan*, 290 F.3d at 258; *Bailey*, 78 F.4th at 814. As Plaintiff's Complaint avers, he stopped communicating with Town officials and the public because it "cause[d him] to constantly fear further harassment and retaliation from the Prosper Police Department and other Town of Prosper officials" (Dkt. #1 at ¶ 116). Given that such repercussions would discourage a person of ordinary fitness from exercising constitutionally protected conduct, this element is satisfied. *See Keenan*, 290 F.3d at 258.

### 3.    Defendant Boothe's adverse actions were substantially motivated against Plaintiff's exercise of protected conduct.

Next, the Court must examine Defendant Boothe's motivation behind the adverse action. *Id.* Defendant Boothe alleges that the objectively reasonable law enforcement purpose of investigating a public official's impersonation motivated the arrest—not Plaintiff's protected speech (Dkt. #8 at pp. 26–27). Plaintiff, on the other hand, argues that his protected speech motivated Defendant Boothe to arrest him because they did not begin to investigate Plaintiff until after he sent them an email expressing disappointment and skepticism about the Town's handling of the criminal investigation data (Dkt. #16 at p. 44; Dkt. #1 at ¶¶ 34, 40–41).

At this stage, the Court is satisfied that Plaintiff has met his burden to plead sufficient facts to plausibly allege that Defendant Boothe acted with retaliatory motivation. Granted, a preceding event does not necessarily cause a subsequent event simply because it came before. But in this context, the Fifth Circuit counsels that it is "reasonable to assume" Defendant Boothe's subsequent actions were "substantially motivated as a response to [P]laintiff's exercise of protected conduct" if Plaintiff engaged in "politically and financially damaging" accountability efforts that are lawful. *See Keenan*, 290 F.3d at 261. Here, Defendant Boothe issued a document preservation hold only "two days after Plaintiff emailed Town Council disclaiming any intent to impersonate a Town official" (Dkt. #1 at ¶ 40). Plaintiff's approach to keeping the Town accountable could have been damaging due to loss of employment or income, business relationships, or, as the subject of the instant case shows, retaliatory enforcement by authorities. Thus, the assumption in *Keenan* is equally reasonable to apply here. *See Keenan*, 290 F.3d at 261.

### 4.    Plaintiff has plausibly pleaded common law malicious prosecution.

To successfully allege a retaliatory criminal prosecution as a First Amendment violation, Plaintiff must further establish each element of common law malicious prosecution. *See Keenan*, 290 F.3d at 260 (citing *Johnson*, 18 F.3d at 320) ("[R]etaliatory criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution, including the absence of probable cause to prosecute."). Malicious prosecution requires proof of three elements: "(1) the suit or proceeding was instituted without any probable cause; (2) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (3) the prosecution terminated in favor of the accused." *Armstrong v. Ashley*, 60 F.4th

262, 278 (5th Cir. 2023) (internal quotations omitted) (citing *Thompson v. Clark*, 596 U.S. 36, 44 (2022)) (cleaned up).

Plaintiff has plausibly pleaded these elements. As explained above, Defendant Boothe's search and arrest warrants lacked sufficient indicia of probable cause to justify Plaintiff's arrest. *See supra* Sections IV.B–C. The same is true with respect to the second element. *See supra* Section V.B.3 (citing *Keenan*, 290 F.3d at 261) (applying the presumption of substantial motivation). Finally, Judge Roach, Jr. favorably terminated Plaintiff's prosecution by granting a motion to quash on the indictment, presumably because at least one of Plaintiff's alleged bases for the Motion supported an inference that the Grand Jury was tainted (Dkt. #1 at ¶¶ 87–89).

Therefore, Plaintiff has met his burden to plead sufficient facts to state a claim for common law malicious prosecution. The overall result, then, is that Plaintiff has indeed established *prima facie* First Amendment retaliation and malicious prosecution claims. Having determined that, the Court will now consider whether caselaw clearly established that Defendant Boothe's conduct would have violated the First Amendment. *See Flores*, 381 F.3d at 395.

### C.    Defendant Boothe had "fair warning" that he violated Plaintiff's clearly established rights.

Defendant Boothe asserts the law does not clearly establish that a law enforcement agency cannot investigate possible criminal activity surrounding a TPIA request (Dkt. #8 at p. 28) (citing *Grisham v. Valenciano*, No. SA-21-CV-00983, 2023 WL 367216, at *5 (W.D. Tex. Jan. 20, 2023)).[14] Defendant Boothe further contends that Plaintiff's constitutional rights cannot shield his criminal conduct from prosecution (Dkt. #8 at p. 29) (collecting cases). Plaintiff disagrees, arguing that it

---

[14] The Court must disregard Plaintiff's citations to inapplicable caselaw post-dating the arrest as it did with Defendant Boothe's argument (Dkt. #16 at p. 45) (citing *Bailey*, 78 F.4th at 814). *See supra* note 9, at 32.

was clearly established at the time of Plaintiff's arrest that "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable" (Dkt. #16 at p. 45) (quoting *Keenan*, 290 F.3d at 261). From Plaintiff's perspective, not only did Defendant Boothe lack probable cause to arrest Plaintiff, but any other reasonable officer in this circuit would have concluded the same (Dkt. #16 at p. 45) (collecting cases).

To evaluate whether the law surrounding First Amendment retaliation was clearly established at the time of Plaintiff's arrest such that "every reasonable official would have understood that what he is doing violates the right," the Court looks to Fifth Circuit decisions issued before the date on which the arrest occurred—July 20, 2021 (Dkt. #1 at ¶ 82). *Jackson v. City of Hearne*, 959 F.3d 194, 200–01 (5th Cir. 2020) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

The first case the Court will consider, *Keenan*, involves police officers who allegedly retaliated against plaintiffs for reporting a "possible wrongdoing" to the county district attorney and a local television station. 290 F.3d at 256. In particular, plaintiffs "observed on-duty deputy constables serving notices to vacate premises and providing private security services . . . [for] a small fee." *Id.* at 256. After plaintiffs resigned, they reported the officers' conduct to the television station, which aired a "highly critical, six-part investigative report entitled 'Constable Cash'." *Id.* Months later, officers stopped plaintiffs' car while driving a heavily-traveled street, ostensibly because plaintiffs' rear license-plate light "'was inoperable at the time of the offense.'" *Id.* at 257. During the stop, the officers "detained both plaintiffs for an inordinate period of time—allegedly with their guns drawn during part of the traffic stop—and ultimately issued only a minor traffic citation that was later dismissed." *Id.* at 259.

41

On a separate occasion, one of the plaintiffs tried videotaping the officers as they provided allegedly illegal private security services. *Id.* at 257. One officer noticed plaintiff and approached them, after which plaintiff purportedly pointed a gun at him. *Id.* Plaintiff insisted that he pointed a video camera at the officer, not a gun; the officer still arrested plaintiff on a "misdemeanor 'deadly conduct' charge." *Id.* The lone fact supporting plaintiff's deadly conduct charge was the officer's own assertion that "he was a trained law enforcement officer, and he knows a gun when he sees it." *Id.* at 260 (cleaned up). The lower court found that the officer had probable cause, confirmed by a grand jury, to arrest plaintiff. *Id.* at 260. The Fifth Circuit disagreed, however, holding that the lower court erroneously found probable cause based on the officer's own statements because there was no grand jury indictment. *Id.* Thus, the Court concluded that the officers' conduct did in fact violate the First Amendment.

*Keenan* is distinguishable from this case in multiple respects. While the *Keenan* plaintiffs alleged that the police had committed a "possible wrongdoing"—a phrase Plaintiff would likely apply to the conduct at issue here—they personally observed police engaging in the purported violation as it occurred and later confirmed with the Office of the Attorney General that the officers' conduct did indeed violate Section 86.021 of the Local Government Code. *See id.* at 256 n.1. The motive to retaliate, then, was much clearer: the *Keenan* officers would have wanted to silence the plaintiff regarding the officials' separate, underlying offense. Here, by contrast, Plaintiff has not alleged that some underlying violation has occurred, meaning Plaintiff can prove a motive to retaliate only through indirect evidence of the effect that Plaintiff's own conduct subjectively had on Town officials. Put another way, Plaintiff's path to proving retaliation is less clear than that of the *Keenan* plaintiffs. Additionally, there was no grand jury indictment in *Keenan*, while here,

the Collin County Grand Jury issued one (Dkt. #8-12). *See id.* at 260. Finally, unlike in *Keenan*, Defendant Boothe relied on more than just his own statements to argue that probable cause existed to arrest Plaintiff. *See id.* He also relied on the opinions of the Collin County Grand Jury and Sate District Court Judge reviewing the same facts (Dkt. #8 at pp. 1, 18; Dkt. #8-12). The result is that *Keenan* is not so factually similar to the case at hand that it clearly establishes First Amendment law such that "every reasonable official would have understood that what he is doing violates [Plaintiff's] right." *Jackson*, 959 F.3d at 200–01.

The next case, *Davidson v. City of Stafford*, was decided in 2017. 848 F.3d 384 (5th Cir. 2017). In *Davidson*, an anti-abortion protester situated himself in a green space between a highway and a Planned Parenthood parking lot to express his pro-life views. *Id.* at 388. His protest consisted of "holding a sign that said 'Pray to End Abortion,' and waving at cars both on [the highway] and in the parking lot." *Id.* If passersby stopped, he would "speak to the passengers and offer them a card with a phone number to a service that offers free pregnancy tests and ultrasounds." *Id.* Following a call to the police by Planned Parenthood personnel, two officers were dispatched to the protester's location to investigate the scene. *Id.* at 389. Upon confronting the protester, the police asked for identification, to which he responded that "he did not have any identification and that his name was 'Jonathan'." *Id.* at 388–89. The police subsequently arrested the protester, stating that "you don't ID, you go to jail." *Id.* at 389. The protester informed the police that he was not operating a motor vehicle, presumably to show he had no reason to carry identification, but the officers replied that "when we're conducting an investigation, [and you] fail to give your name to the police, you go to jail." *Id.* After being arrested, the protester filed a Section 1983 action against the arresting officers, police chief, and city, asserting First and Fourth Amendment

violations. *Id.* On review, the Court in *Davidson* affirmed the lower court's holding that no probable cause existed to call for the protester's arrest because the allegedly violated statute "clearly was not triggered." *Id.* at 392. The Court reasoned, in part, that "an arrest without probable cause violates both First and Fourth Amendment rights . . . ." *Id.* at 393.

While not directly on point, *Davidson* is more factually analogous to this case than *Keenan*. At a high level of abstraction, *Davidson* also relates to a plaintiff with a veiled identity. *See id.* at 388–89. He communicated his opinion to the public in personal protest against Planned Parenthood as an institution. *See id.* at 388. And just as Plaintiff did in this case, the plaintiff in *Davidson* argued that the police had no probable cause to show the offense triggering the alleged retaliation was ever committed. *See id.* at 389. Yet, a more granular view reveals how the two cases begin to diverge. Unlike Plaintiff in this case, the *Davidson* plaintiff identified himself by name. *See id.* at 388–89. And the officers in *Davidson* arrested the plaintiff because he did not carry identification with him, not because he anonymized his name. *See id.* Thus, although the Court is similar to that in *Davidson* in that it does not believe the allegedly violated statute was triggered, *see supra* Section IV.B, the facts are not so analogous to the instant case that they clearly "place[] the . . . constitutional question beyond debate." *Pearson*, 555 U.S. at 236–37.

The Court recognizes that the novel factual circumstances presented by this case implicate important interests. But novel circumstances alone do not guarantee that the conduct at issue was objectively reasonable in view of clearly established law at the time of the violation. Indeed, as the Supreme Court has established, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Such a conclusion is warranted here. As unique as the facts of this case may be, the Court finds

that contemporaneous caselaw provided Defendant Boothe with "fair warning" that leveraging his governmental authority to retaliate against Plaintiff for exercising his right to protected speech would have violated the First Amendment. *See Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)) ("The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."); *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996) ("government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable"). As a result, the Court holds that Defendant Boothe is not entitled to qualified immunity. Accordingly, Defendants' Motion to dismiss Plaintiff's First Amendment retaliation claim should be **DENIED**.

## CONCLUSION

It is therefore **ORDERED** that Defendants Lt. Boothe and Chief Kowalski's Motion to Dismiss (Dkt. #8) is hereby **GRANTED in part** and **DENIED in part**. Specifically, Defendants' Motion is **GRANTED** as to Plaintiff's claims against Defendant Kowalski. Defendants' Motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**
**SIGNED this 30th day of May, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE