IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **LEONARD JOHNSON** | § | |
| | § | |
| **v.** | § | **CASE NO.  4:23-cv-650** |
| | § | |
| **THE TOWN OF PROSPER, TEXAS, et. al.** | § | |

**TOWN OF PROSPER'S REPLY
TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **TOWN OF PROSPER, TEXAS**, and files its REPLY TO PLAINTIFF'S

RESPONSE TO TOWN'S MOTION FOR SUMMARY JUDGMENT, as follows:

**I.**
**Plaintiff's RESPONSE fails to any demonstrate fact issues precluding dismissal of Town**

The Plaintiff's RESPONSE  RESPONSE TO TOWN OF PROSPER'S MOTION FOR SUMMARY

JUDGMENT (hereinafter "RESPONSE")[Dkt. 74] does nothing to negate dismissal of the Town.

Essentially repeating the rebuked allegations of his lawsuit, Plaintiff's RESPONSE ignores or attempts

to downplay the bulk of the uncontroverted evidence and regurgitates the debunked theory that the

Prosper Town Council somehow spearheaded and masterminded the investigation and prosecution

of Plaintiff for impersonating a public servant.  Simply put, Plaintiff's ongoing mantra that the Town

Council somehow was involved in the prosecution of Plaintiff lacks evidentiary basis.  The entirety

of Town Council Agendas and meetings were provided to Plaintiff - and none of them have any

reference at all to Plaintiff.  Moreover, Plaintiff exhaustively deposed Chief Kowalski, former Town

Manager Jefferson, Town Executive Director Battle, Councilmember Hodges, Councilmember

Mays, and even Police Records Clerk Reaves, all of whom confirmed that the Town Council did not

direct that Plaintiff be investigated.  Plaintiff clings to the unfounded belief that the Town Council somehow sought to investigate and prosecute him when there remains no evidence of his conclusory conspiratorial contentions.  Notable, too, is that Plaintiff's RESPONSE effectively ignores the uncontroverted evidence establishing that the Town, through its Police Department, has clear written - and constitutionally sound - policies and procedures regarding criminal investigations.  Plaintiff's RESPONSE likewise points to the extremely rare "ratification" concept to try to contort *Monell* into a strict liability theory.  Finally, Plaintiff bemoans purported discovery issues and alternatively seeks more discovery - a  ploy which should be denied. Despite the volume of materials submitted with Plaintiff's RESPONSE, what emerges is that *Monell* does not exist and dismissal of the Town of Prosper should follow.

## II.
### Statement of Material Facts

Plaintiff chides that the Town has "rehashed" arguments it previously made in its Motion to Dismiss, then averring:

> "Not only does it reproduce the same arguments raised to challenge Plaintiff's pleadings, but it offers absolutely **no** evidentiary support. Indeed, the Town does not cite to a single contention of material fact or one shred of evidence in its argument; instead, the Town cites exclusively to Plaintiff's pleadings and briefing at the Motion to Dismiss phase."[1]

Plaintiff is simply incorrect.  The Town, as required by Eastern District LOCAL RULE 56(a), set out a detailed "Statement of Material Facts", identifying 118 material facts with citations to specific evidence supporting each.[2]  The operative law has not changed, so it should not be surprising that the legal arguments remain consistent, but now supported by summary judgment evidence.

---

[1]See, Plaintiff's RESPONSE [Dkt. 74], p. 13 (emphasis in original)

[2]See, Defendant TOWN OF PROSPER'S MOTION FOR SUMMARY JUDGMENT [Dkt. 70], paragraph IV, p. 4-15

Plaintiff's RESPONSE provides his "Response To Movant's Statement Of Undisputed Material Facts"[3] purporting to present facts and referencing supporting evidence. The Town is confident the Court will carefully review Plaintiff's presentation of material facts and make its own determinations of whether same are indeed "facts" as cited, and if so, material, but it cannot go without mention that Plaintiff has taken liberties in relaying their version of "facts". For example, Plaintiff avers "But despite his concerns, Hodges testified that he did not personally ask the Prosper Police Department to initiate the investigation into Plaintiff regarding his public records requests. Ex. 7 (Hodges Dep.) at 78:10-79:2; see also, id at 74.:11-15".[4] A review of the cited deposition excerpt demonstrates that this is a strained, at best, interpretation of the testimony. Similarly, many "facts" are little more than insinuation and innuendo by Plaintiff's counsel. By way of illustration, Plaintiff points to an email by Town Executive Director Battle to Town Attorney Welch transmitting documents related to the Plaintiff's Public Information Act request, but then adding the unsupported argument [not fact] that such was "likely referring to information Council Member Marcus Ray shared during the prior night's Town Council Executive Session."[5] This contention is directly rebuked by publicly posted official City Council meeting Agendas and minutes - which were provided to Plaintiff. Another example is Plaintiff's pointing to what they describe as an "interview"[6] by the Collin County District Attorney's Office with Lt. Boothe in March of 2022 [which would have been nearly a year and a half after the October 14, 2020, PIA requests from Plaintiff], which in actuality is the prosecutor's stream of conscious personal notes of his [Prosecutor's] recollection of a conversation with Lt. Boothe[7] -

---

[3]See, Plaintiff's RESPONSE [Dkt. 74], p. 2-11

[4]See, Plaintiff's RESPONSE [Dkt. 74], p. 5

[5]See, Plaintiff's RESPONSE [Dkt. 74], p. 6

[6]See, Plaintiff's RESPONSE [Dkt. 74], p. 7

[7]See, Plaintiff's RESPONSE [Dkt. 74], Ex. 15

which now cannot be corrected or disputed due to Lt. Boothe's death.  Another example is Plaintiff's contention that it was Chief Kowalski's "opinion that the impersonation offense had been committed"[8] when in actuality Chief Kowalski was very clear that the Collin County District Attorney's Office had concluded that a crime had been committed, and thus, the the Prosper Police Department was not in search of a crime, they were in search of a suspect.[9]  Again, the evidence speaks for itself, not Counsel's spin on it.

## IV.
### Plaintiff cannot establish Section 1983 and *Monell* liability

Plaintiff's RESPONSE acknowledges the three-prong criteria required to establish *Monell* liability,[10] but then fails to meaningfully discuss how he meets any of those three core requirements.

### 1.    Plaintiff cannot prove constitutionally deficient policy, practice or custom

Plaintiff does not dispute that the Prosper Police Department has comprehensive written policies and procedures set out in their PROSPER POLICE DEPARTMENT STANDARD OPERATING PROCEDURE which specifically includes the PROSPER POLICE DEPARTMENT STANDARD OPERATING PROCEDURE No. 200.001 entitled "Criminal Investigation Division Organization & Operations"; the PROSPER POLICE DEPARTMENT STANDARD OPERATING PROCEDURE No. 103.105 entitled "Criminal Investigations"; and the PROSPER POLICE DEPARTMENT STANDARD OPERATING PROCEDURE No. 102.008 entitled "Records - Privacy, Retention, Security, And Release Of Information.[11]  It is

---

[8]See, Plaintiff's RESPONSE [Dkt. 74], p. 7

[9]See, Defendant TOWN OF PROSPER'S MOTION FOR SUMMARY JUDGMENT [Dkt. 70] Ex. 1, p. 25, 45, 47-48, 67, 71, 106, 138)

[10]See, Plaintiff's RESPONSE [Dkt. 74], p. 13-27

[11]See, Defendant TOWN OF PROSPER'S MOTION FOR SUMMARY JUDGMENT [Dkt. 70] Ex.'s 3, 4 and 5

undisputed that the Prosper Police Department policies and procedures have been scrutinized, reviewed and approved by an independent third-party, the Texas Police Chiefs Association Foundation, for best practices through a formal accreditation process, and that since 2017, the Prosper Police Department became a recognized accredited Police Department by the Texas Police Chiefs Association.[12]  Moreover, Plaintiff does and cannot not point to any policy, custom or practice of the Town that authorizes or condones arrests without the existence of probable cause.  The Town, too, has clear written policies and procedures regarding Records Management and Public Information, and specifically, ADMINISTRATIVE REGULATIONS, Chapter 20, entitled "Records Management" which in Section 20.10, specifically address "Public Information Act Requests".[13]

Plaintiff's RESPONSE, like his pleadings, uses *Monell* buzzwords but fails to point to evidence of any constitutional problems with Town policies. Again, Plaintiff conflates a Town Council "decision" [an allegation which is rebuked by evidence] with a written policy. Faced with this fact, Plaintiff's approach morphs *Monell* to a single incident approach.  In other words, Plaintiff now argues that he can "establish an official policy predicated on a single act: by pointing to an express statement, ordinance, regulation, or decision that is officially adopted by a final policy maker."[14] His ploy fails.  Plaintiff headnotes that "Official Town Actions Amount to an Inference of a Material Fact Dispute"[15] but the resulting argument is nothing more that a series of unsupported inferences untethered to any actual facts or evidence.  Plaintiff again points to a Prosecutor's personal notes

---

[12]See, Defendant TOWN OF PROSPER'S MOTION FOR SUMMARY JUDGMENT [Dkt. 70], Ex. 1, p. 95-97 and https://starlocalmedia.com/checkout/prosper/news/prosper-pd-earns-state-accreditation-for-best-practices/article_cf2 e2803-f044-43a7-901d-e294f14371c4.html)

[13]See, Defendant TOWN OF PROSPER'S MOTION FOR SUMMARY JUDGMENT [Dkt. 70] Ex. 6

[14]See, Plaintiff's RESPONSE [Dkt. 74], p. 16

[15]See, Plaintiff's RESPONSE [Dkt. 74], p. 16

with his [Prosecutor's] interpretation of what he recalls Lt. Boothe [allegedly] describing.[16] This is not competent summary judgment evidence nor does it support any plausible inference(s).  Plaintiff's impermissible inference stacking is most notable when viewed through the lens of official City Town meeting agendas and minutes confirming that Plaintiff was never a topic of Town Council meetings.

But more basic is that even if the Town had decided to initiate an investigation of Plaintiff [which the Town denies] there is no evidence that the Town [as opposed to individual Investigators] had any role in the method and manner of the subsequent investigation, arrest, and/or indictment. In other words, a decision to start an investigation was not the "moving force" of Plaintiff's claimed constitutional violation, i.e., his eventual arrest and indictment for impersonating a public official. The absence of causative connection is further underscored by the intervening determinations of probable cause by a State District Judge, a Grand Jury, and review by the Collin County District Attorney's Office. Put bluntly, Plaintiff's myopic focus on the purported role of the Town Council in purportedly initiating the investigation of the Plaintiff is irrelevant.

## 2. Town Policies were not "moving force" of alleged constitutional deprivation

A meaningful discussion of the concept of "moving force" is completely absent from Plaintiff's lawsuit.  His RESPONSE is equally deficient, particularly with respect to any evidence. Plaintiff correctly sets out his burden on this element to show that either (1) the policy itself was unconstitutional or, (2) that there was a "causal link" between the policy and constitutional tort, and that the Town acted "'with deliberate indifference to the known or obvious fact' that a specific constitutional violation would follow."[17]  He fails to prove either prong.

---

[16]See, Plaintiff's RESPONSE [Dkt. 74], p. 16

[17]See, Plaintiff's RESPONSE [Dkt. 74], p. 16

As discussed above, Plaintiff does not argue that the City's written policies and procedures themselves were unconstitutional.  Rather, he focuses on the second prong but fails to demonstrate that the Town acted with deliberate indifference to a known or obvious fact that a specific constitutional violation would follow.  Plaintiff's tactic is to argue that Lt. Boothe violated Plaintiff's Fourth Amendment[18] and First Amendment rights[19] but cannot show how the City was in any way deliberately indifferent to anything.  Plaintiff, for example, sweepingly argues "The Town at all times lacked probable cause to search and arrest Johnson".[20]  This premises is flawed on several levels. First, "The Town" did not investigate Plaintiff.  Second, the Collin County District Attorney's Office had advised Lt. Booth and Sgt. Travis that a crime had been committed. Third, a State District Judge and later a Grand Jury determined that probable cause existed to arrest Plaintiff for impersonating a public official.  The Town could hardly be deliberately indifferent because the actual "known and obvious facts" were that the Prosecuting Agency, a State District Judge, and a Grand Jury all concluded that probable cause existed. While admittedly this Court disagrees, the Town of Prosper could certainly reasonably believe that Lt. Boothe's actions were legal and justified under these facts.

Plaintiff's suggestion that Chief Kowalski "ratification" constituted deliberate indifference[21] cannot pass muster.   He, too, eventually learned that the Collin County District Attorney's Office, a State District Judge, and a Collin County Grand Jury all concluded that probable cause existed through their respective actions, i.e., that a crime had been committed, a finding of probable cause, and an indictment.   Peppered with terms like "substantial likelihood", Plaintiff tries to insinuate there was some nefarious motive by Chief Kowalski when there is no evidence for same.

---

[18]See, Plaintiff's RESPONSE [Dkt. 74], p. 20-23

[19]See, Plaintiff's RESPONSE [Dkt. 74], p. 24-25

[20]See, Plaintiff's RESPONSE [Dkt. 74], p. 20

[21]See, Plaintiff's RESPONSE [Dkt. 74], p. 27

### 3.      Plaintiff's Ratification Theory fails

The paucity of actual evidence to support Plaintiff's "ratification" theory is telling, especially considering that Fifth Circuit precedent has limited the theory of ratification to "extreme factual situations." See, i.e., *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985); see also, *Lugo v. Collin Cnty.*, No. 4:11-CV-00057, 2011 WL 4378093, 2011 U.S. Dist. LEXIS 106681 (E.D. Tex. Aug. 2, 2011).

Plaintiff suggests that "there is a genuine dispute of material fact regarding whether Chief Kowalski's ratification of Johnson's investigation and arrest was taken with at least deliberate indifference to Plaintiff's constitutional rights."[22]   But distilled to its essence, the Plaintiff's ratification argument is little more than that the Chief approved Lt. Boothe's handling of the investigation.  For example, Plaintiff points to Chief Kowalski's approval "of Lt. Boothe's actions - from beginning to end - as consistent with Departmental policy."[23]   Indeed, as Chief Kowalski testified, Lt. Boothe (1) met with the District Attorney's Office [who confirmed that a crime had occurred]; (2) obtained search warrants from a seasoned State District Court Judge; and (3) submitted his investigation to the Prosecuting Agency which in turn presented it to the Grand Jury, resulting in an indictment.  There is nothing "extreme" about what transpired regarding the Plaintiff's investigation, arrest, and eventual prosecution.  It was exactly how any criminal investigation and prosecution should proceed - confirm that a crime was committed, seek judicial review for issuance of warrants, and submission to a Grand Jury.  There remain no plausible non-conclusory factual allegations that would convert this situation into the "extreme factual situation" for which ratification would apply and overcome the three traditional elements of *Monell*.

---

[22]See, Plaintiff's RESPONSE [Dkt. 74], p. 27

[23]See, Plaintiff's RESPONSE [Dkt. 74], p. 27

## V.
### Further Discovery is not warranted and Plaintiff's concerns are misguided and unfounded

Plaintiff's RESPONSE alternatively requests the Court to defer ruling on the Town's Motion so that Plaintiff can conduct even more discovery.[24] Stripped of its unnecessarily disparaging and unfounded contentions, the gist of Plaintiff's request is founded on the Town's recent voluntary production of emails regarding Plaintiff's Public Information Act request. Plaintiff specifically seeks "an opportunity to obtain the discovery which he is entitled regarding the existence of a genuine issue of material fact  fact regarding (i) a decision that was officially promulgated and ratified by the municipal policymakers and (ii) that the decision was the moving force behind the violation."[25]

By way of background, this case was filed on July 14, 2023, stayed for a period, then re-activated on May 30, 2025, when Defendants' two Motions to Dismiss were denied.  An ORDER GOVERNING PROCEEDINGS was issued on June 6, 2025 [Dkt, 29], requiring Initial Mandatory Disclosures by July 7, 2025, which was extended to August 4, 2025. [Dkt. 36].  On August 4, 2025, Defendants served Initial Disclosures [Dkt. 38], providing Plaintiff with 78 categories of documents, including the entire criminal investigation file. The Town has supplemented its disclosures on four more occasions - November 14, 2025, February 24, 2026, March 4, 2026, and March 17, 2026 [Dkt.'s 51, 68, 69, 71, and 73] providing more than 103 categories of documents and thousands of pages of documents, emails, and body camera videos. Plaintiff sent discovery to the Town on October 2, 2025, a set of Interrogatories and Request for Production, and by agreement, answered on November 14, 2025 [Production] and January 30, 2026 [Interrogatories].  Plaintiff sent a second set of Interrogatories to the Town on January 2, 2026, which were answered on January 30, 2026. Discovery was also sent to Defendant Boothe on January 2, 2026, but rendered moot by his death.

---

[24]See, Plaintiff's RESPONSE [Dkt. 74], p. 29-30

[25]See, Plaintiff's RESPONSE [Dkt. 74], p. 29

Beside the deposition of Chief Kowalski [taken in his individual capacity], the first request by Plaintiff for any other depositions was on December 11, 2025,  for seven identified individuals [not a Town representative], which was six months and 11 days after the case was reactivated and just one month and 19 days before the then existing discovery deadline of January 30, 2026 - with the bulk of that time during holidays.  Deadlines were extended [Dkt. 67] and to accommodate Plaintiff, eight depositions were taken in February and March, 2026, to include Chief Doug Kowalski [as Town representative], Town Executive Director Robyn Battle [2 times, individually and as Town representative], former Town Manager Harlan Jefferson, Councilmember Jeff Hodges, Councilmember Marcus Ray, Risk Manager Tony Luton, and Records Clerk Deavin Reaves.

Plaintiff's instant concern is a product of their own making and will not likely alter confirmed material facts, particularly since the current "dispute" centers on mostly irrelevant issues.  The emails provided by the City on March 17, 2026, were not in response to any particular pending discovery request.  In fact, Plaintiff's prior specific Request for Production was limited to certain emails, which the City provided months ago. During the deposition of Robyn Battle, she described the email search which was previously performed to ascertain what, if any, data still existed.  Plaintiff's counsel questioned the scope of the search and demanded on March 11, 2026, what was essentially a new discovery request.  Undersigned advised Plaintiff's counsel, in pertinent, as follows:

> The email which you sent on March 11, 2026, @ 5:25 p.m. is indeed a completely **new** request for completely different spheres of emails, which, again, the Town is diligently working to provide but cannot be done in the highly expedited time frame you unilaterally demanded.

The emails between Counsel on this issue is attached as Exhibit No. 1. It is the Town's position that it has diligently and appropriately complied with its discovery obligations. It additionally asserts that this "discovery issue" is a matter which can and should be resolved either by Counsel, or if needed, an informal discovery conference but that a request to re-depose every witness is not meritorious.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendant the **TOWN OF PROSPER,** prays that the Court grant its MOTION FOR SUMMARY JUDGMENT; that it dismiss the Plaintiff's claims and pleas for damages, and that the Town have such other relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

By:     /s/ *Robert J. Davis*
     **ROBERT J. DAVIS**
State Bar No. 05543500
**KYLE THOMAS BARRY**
State Bar No. 24122284
**MATTHEWS, SHIELS, KNOTT,**
**EDEN, DAVIS & BEANLAND, L.L.P.**
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
972/234-3400 (office)
972/234-1750 (telecopier)
bdavis@mssattorneys.com
kbarry@mssattorneys.com

**ATTORNEYS FOR DEFENDANTS**
**THE TOWN OF PROSPER, TEXAS,**
**PAUL BOOTHE (Deceased),**
**and DOUG KOWALSKI**

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2026, I electronically filed the foregoing document with the clerk of the Court for the Eastern District, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Thomas S. Leatherbury and Peter B. Steffensen.

/s/ *Robert J. Davis*
**ROBERT J. DAVIS**