# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| LEONARD JOHNSON, *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:23-cv-650<br>Judge Mazzant |
| THE TOWN OF PROSPER, TEXAS, et. al., *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Town of Prosper's Motion for Summary Judgment (Dkt. #70) (the "Motion"). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

The Court has previously addressed the factual background of this case in its prior Memorandum Opinion and Order (Dkt. #35 at pp. 1–5) and finds no need to repeat the entire story here. Because Defendant Town of Prosper, Texas ("Prosper" or "the Town") has averred that the present Motion "will focus on the one claim against the town," the Court restricts its evidentiary recounting to those facts immediately necessary for resolution of the filing (Dkt. #70 at p. 1).

Plaintiff is a former software application developer whose wife was previously employed as a communications manager and head of dispatch for Prosper (Dkt. #1 at ¶¶ 13–14). After Plaintiff's wife was negatively affected by certain organizational changes in the Town's police department, Plaintiff devised a plan to make the public aware of the Town police department's shortcomings (Dkt. #1 at ¶¶ 17, 20). Specifically, Plaintiff decided to use the Texas Public Information Act ("TPIA") to show that case clearance rates were beginning to fall under the Town police

department's leadership (Dkt. #1 at ¶ 20). Plaintiff sent a total of three requests under the email address "prospercitycouncil@gmail.com," and pseudonym "Geoff Hodges," a name that closely resembled the name of Town councilmember Jeff Hodges (Dkt. #16 at p. 8). After receiving an unsatisfactory response, Plaintiff sent an unsigned message to the entire Town Council, the mayor, and the town manager directly, admitting that he had used "a false name and email account when requesting information from the city. As a proud Prosper citizen, I did so to remain anonymous and protect myself from retaliation" (Dkt. #1 at ¶ 34). Within three hours of receipt of that email, Defendant Lt. Boothe ("Boothe") created the incident report which launched the criminal investigation into Plaintiff (Dkt. #74 at p. 11). It was around this time that certain information regarding Plaintiff was transferred to the Town attorney (Dkt. #74 at p. 11). Days later, on November 3 and November 6, 2020, Plaintiff submitted additional TPIA requests from another pseudonymous account under the name "Sam Kingston" (Dkt. #1 at ¶ 41).

On July 20, 2021, the day of Plaintiff's wedding anniversary, Plaintiff was arrested by Boothe and subsequently released on bond (Dkt. #1 at ¶ 83; Dkt. #74-2 at p. 3). On November 4, 2021, a Collin County Grand Jury indicted Johnson for impersonating a Public Servant under TEX. PENAL CODE § 37.11(a)(1) (Dkt. #1 at ¶ 83; Dkt. #8-12). On November 7, 2022, Plaintiff filed a motion to quash his indictment, which was granted without opposition from the Collin County District Attorney the next day (Dkt. #1 at ¶¶ 87–88).

Plaintiff ultimately sued Prosper for violating Plaintiff's First, Fourth, and Fourteenth Amendment rights, arguing that he is entitled to damages against the Town under 42 U.S.C. § 1983, along with declaratory relief regarding the same (Dkt. #1 at p. 29). On February 25, 2026, Prosper filed the pending Motion, seeking summary judgment in its favor on Plaintiff's *Monell* claim

(Dkt. #70). Plaintiff's response and Prosper's reply followed quickly thereafter, and the Motion is now ripe for adjudication (Dkt. #74-1; Dkt. #78).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of

evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. *See Solomon v. Hou. Corrugated Box Co.*, 526 F.2d 389, 396–97 (5th Cir. 1976). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (citation modified). The Court must consider all of the evidence but "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**ANALYSIS**

Plaintiff is attempting to hold Prosper liable under 42 U.S.C. § 1983 for various violations of Plaintiff's constitutional rights. Section 1983 creates a cause of action against a "person" who, acting under the color of state law, deprives another of a constitutionally or federally protected right, privilege, or immunity. *See id.* When the statute was originally passed, municipalities were generally not considered "persons" acting under the color of state law and thus enjoyed immunity from suit. This changed with the Supreme Court's landmark decision in *Monell v. Department of*

*Social Services*, 436 U.S. 658 (1978), which recognized that a municipal government could be liable under § 1983 when a municipal policy or custom causes a violation of a constitutional right.

To hold a municipality liable under *Monell*, a plaintiff must first establish the existence of an underlying constitutional violation, because "if [the] plaintiff does not show any violation of his constitutional rights-then there exists no liability to pass through to the [municipality]." *Brown v. Lyford*, 243 F.3d 185, 191 n.18 (5th Cir. 2001). Next, a plaintiff must establish the existence of three principal elements: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). This is especially pertinent here, where Plaintiff's pleadings essentially "assert an unconstitutional policy of municipal retaliation for disfavored speech. [H]e alleges that the unconstitutional policy resulted in h[is] arrest without probable cause (a Fourth Amendment violation) and h[is] retaliatory arrest (a First Amendment violation)." *Thompson v. McGehee*, No. 25-10196, 2026 WL 2069890, at *11 (5th Cir. July 17, 2026).

## I. Constitutional Violation

The Court has previously recognized the violation of Plaintiff's First and Fourth Amendment rights (Dkt. #35 at pp. 19, 35). Although Prosper argues that "Plaintiff . . . cannot prevail against the Town of Prosper because probable cause existed for the Plaintiff's arrest for violation of Texas Penal Code § 37.11" (Dkt. #70 at p. 17), it fails to reference specific evidence or new arguments for the Court to review in support of its proposition. Nevertheless, upon review of the pertinent evidence submitted by both parties, and after resolving all reasonable doubts in Plaintiff's favor, the Court stands on its prior opinion that the relevant "search and arrest warrants lacked sufficient indicia of probable cause to justify Plaintiff's arrest" (Dkt. #35 at p. 40).

## II. *Monell* Liability

In addressing Plaintiff's claim, the Court will search the record for evidence to support the existence of the above-mentioned principal elements, i.e. that: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson*, 588 F.3d at 847.

Plaintiff does not attempt to point to a specific policy, custom, or practice of Prosper that authorizes or otherwise condones arrests without the existence of probable cause. For example, Plaintiff does not center his *Monell* claim on documents such as the "Prosper Police Department Standard Operating Procedure" or the Town's "Administrative Regulations" (*See* Dkt. #78 at pp. 4–5). Rather, Plaintiff contends that the Town Council met as a body and directed one Doug Kowalski ("Chief Kowalski") to investigate the identity of the individual behind Plaintiff's pseudonymous email account, and that Chief Kowalski himself ratified Plaintiff's subsequent investigation and arrest.

The Fifth Circuit has previously held that "[i]t is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008). In such cases, the first and second elements of the section 1983 analysis essentially merge, because "if a municipal official engages in isolated unconstitutional conduct, and if that official has 'final policymaking authority to establish municipal policy with respect to the conduct that resulted in a violation of constitutional rights,' then that isolated unconstitutional conduct will be considered an official municipal policy for purposes of section 1983 municipal liability." *Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751, at *16 (N.D. Tex. July 10, 2015) (quoting *Brown v. Bryan County*, 67

F.3d 1174, 1178 (5th Cir. 1995), *vacated sub nom. Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997)).

**A. Final Policymaker Town Council**

Plaintiff first argues that the Town Council acted as a final policymaker for Prosper. Prosper does not challenge Plaintiff's description of the Town Council in this regard. Accordingly, the Court finds that the Town Council constitutes a relevant final policymaker for the Town of Prosper (Dkt. 70 at p. 24). *See, e.g.*, *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 761 (5th Cir. 2023) ("The . . . City Council [is a] final policymaker[] for the purpose of *Monell* liability").[1]

For a single decision to satisfy *Monell*, the "official or entity possessing 'final policymaking authority' for an action" must actually "perform[] the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017)). "This requires the '*deliberate* choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy *with respect to the subject matter in question*.'" *Id.* Additionally, "[a]t the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

[1] Further supporting the Court's decision is the Home Rule Charter of the Town of Prosper, Texas, which identifies the Town's municipal government as a "Council-Manager Government." Town of Prosper, Texas, TOWN CHARTER (amended 2017), https://www.prospertx.gov/DocumentCenter/View/786/Prosper-Town-Charter-PDF?bidId=. It notes that "all powers of the Town shall be vested in an elective council, hereinafter referred to as the 'Town Council.'" *Id.*; *see also Kellen Allison Cattle Co., LLC v. City of Shamrock*, No. 2:24-CV-241-Z-BV, 2025 WL 1287738, at *4 (N.D. Tex. May 2, 2025) ("Under Texas law, the city council—not the city manager—constitutes the final policymaker." (citing *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016))).

The basis of Plaintiff's § 1983 claim lies in a purported violation of his "First, Fourth and Fourteenth" Amendment constitutional rights by virtue of a "malicious investigation into Plaintiff's identify and, consequently, his unlawful arrest and detention" (Dkt. #1 at ¶¶ 140, 144). Thus, to support a valid *Monell* claim against Prosper, Plaintiff must raise sufficient evidence related to the notion that the Town Council, acting as a final policymaker and through a specific decision, performed the "act that forms the basis of the § 1983 claim." *Webb*, 925 F.3d at 215.

**Plaintiff's First Amendment Claim**. Plaintiff's First Amendment retaliation claim requires the satisfaction of three elements: (1) he was engaged in a constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005). In addition, Plaintiff is required to establish each element of common law malicious prosecution. *Tejada*, 290 F.3d at 260 (citing *Johnson v. La. Dep't of Agric.*, 18 F.3d 318, 320 (5th Cir. 1994)). As related to Prosper, the constitutional violation centers on the existence of a sufficient "adverse government action" which chilled Plaintiff from exercising his constitutional rights (Dkt. #35 at p. 38).

This Court previously identified the relevant adverse government action as Plaintiff's arrest (Dkt. #35 at p. 38). Plaintiff, however, seeks to impose liability on Prosper with reference to the Town Council's "direct involvement in the decision to *investigate* [Plaintiff]" (Dkt. #74 at p. 21 (emphasis added)). To that end, Plaintiff introduces a variety of evidence suggesting that the Town Council ordered individuals to investigate Plaintiff as a result of his communications with the

Town. For example, Plaintiff identifies Boothe's "recounting of the timeline of the investigation" which suggests that "the Town council 'm[et] and [said] we need to investigate and figure out whose [sic] posing as jeff hodges'" (Dkt. #74 at p. 30).

Even assuming, *arguendo*, that Plaintiff has introduced sufficient summary judgment evidence to support the Town Council as the source of an "investigation" into Plaintiff, there exists no evidence pertaining to the Town Council's direct involvement in an unconstitutional "adverse government action" capable of imposing *Monell* liability upon Prosper. Although the investigation ultimately resulted in Plaintiff's arrest, the investigation alone is not sufficient to carry Plaintiff's First Amendment claim. This is because "the Fifth Circuit has explicitly [held that] an investigation is not actionable under its First Amendment retaliation jurisprudence." *Grisham v. Valenciano*, No. SA-21-CV-00983-JKP, 2023 WL 367216, at *5 (W.D. Tex. Jan. 20, 2023) (citing *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999)). At most, the evidence presented suggests that the Town Council performed the "specific act" that formed the basis of an investigation into Plaintiff, not the "specific act that forms the basis of the § 1983 claim," i.e. the act which ultimately chilled Plaintiff's freedom of speech—his arrest. *Webb*, 925 F.3d at 215.

Furthermore, a thorough review of the evidence has not resulted in an observable requisite "affirmative link between" the purported decision to launch an investigation into Plaintiff's actions "and the particular constitutional violation alleged," previously identified by this Court as First Amendment retaliation. *Tuttle*, 471 U.S. at 823. "Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any . . . harm inflicted by a municipal official . . . ." *Id.* Here, however, between the start of the investigation and Plaintiff's arrest lies a total of nine months and the intervening determinations and decisions made

by a State District Judge, a Grand Jury, and the Collin County District Attorney's Office. Because the Town Council has not been sufficiently linked to the specific adverse government action required to trigger a First Amendment retaliation claim, the Town Council cannot be used to support *Monell* liability against Prosper. *See, e.g.*, *Webb*, 925 F.3d at 220 ("At most, the summary judgment evidence allows that the Mayor made the initial decision to pursue collection on the . . . judgment. [But] the Webbs offer no way for us to conclude that *this specific action* by the Mayor violated Webb's constitutional rights.").

**Plaintiff's Fourth Amendment Claim**. In similar fashion to Plaintiff's First Amendment claim, Plaintiff's Fourth Amendment claim is centered upon his arrest and detention. To determine whether a genuine issue of material fact exists regarding the Town Council's involvement in the specific constitutional violation alleged, the Court turns once again to evidence pertaining to its direct actions. Plaintiff's complaint argues that "[t]he Town's official policy is reflected in its collective decision to direct [Chief Kowalski] . . . to investigate and prosecute [Plaintiff]" (Dkt. #1 at ¶ 140). However, Plaintiff has not offered enough summary judgment evidence to suggest that the Town Council, as opposed to another decisionmaker, was directly involved in the method or manner of Plaintiff's eventual arrest. To be sure, Plaintiff has produced evidence to suggest that the Town Council discussed his TPIA requests in a "closed-door executive session meeting" (Dkt. #74 at p. 23). Plaintiff also produced evidence to show that the Town Council received updates on the status of Plaintiff's investigation, and that its receipt of such an update was rare (Dkt. #74 at p. 22). Further, Plaintiff has also indicated that his TPIA request information was initially transmitted to the Town Attorney "around the time of [Plaintiff's] November 2, 2020 email" to various Town Council members (Dkt. #74 at p. 22), and that his requests resulted in the

Town Council's receipt of a presentation containing an "overview of the public information request process" (Dkt. #74 at p. 23). Plaintiff has not, however, produced evidence sufficient to bridge the gap between the Town Council's alleged decision to initiate an investigation and the source of Plaintiff's constitutional harm under the Fourth Amendment.

The absence of sufficient facts in this case becomes readily apparent upon consideration of other false arrest and retaliation *Monell* cases. In *Thompson*, for instance, the Fifth Circuit found a plaintiff had pleaded sufficient facts to survive a Rule 12(b)(6) challenge by identifying a City Council that instructed the police to "target city council persons for code violations in an effort to disparage them" and further directly threatened individuals with termination if they did not recant statements made during city council meetings. 2026 WL 2069890, at *11. The plaintiff in that case alleged that multiple citizens had submitted reports to the City Council regarding the police department retaliating against them because of their speech. *Id.* Not only that, but the plaintiff alleged that the police contacted her directly and ordered her "to stop publicly voicing her concerns," and that "if she did not, there would be consequences." *Id.* No such facts (or evidence to support them) have been identified in this case at summary judgment, and this absence is uniquely damaging to Plaintiff's claims, as "the only 'specific fact' the [Plaintiff has] pleaded [is] the single incident in which he himself was involved." *Id.* (citing *Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018)). At most, Plaintiff has shown that the Town Council restricted internal communications with him to the Town Attorney, which is a specific decision separate and apart from the basis of the constitutional violation at issue (Dkt. #74-24 at p. 1 (Chief Kowalski's email concerning his belief that "the Town has determined that any responses to the person who

committed a Felony of Impersonating a Public Servant . . . should only be responded to by the Town Attorney")).

In this context, the Court declines to hold that "evidence reflecting a meeting of the Town Council in which a decision was made to investigate [Plaintiff] establishes that there is a genuine issue of material fact regarding the existence of an official policy" (Dkt. #74 at p. 23). *Cf. Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 484–85 (1986) (finding a valid claim against a county when the relevant final policymaker "made a considered decision based on his understanding of the law and commanded the officers forcibly to enter petitioner's clinic," and "[t]hat decision directly caused the violation of petitioner's Fourth Amendment rights.").

**B. Final Policymaker Chief Kowalski**

Plaintiff also argues that Chief Kowalski, as the head of the Town's police department, acted as a final policymaker for Prosper. As with the Town Council, Prosper does not challenge Plaintiff's description, and the Court finds that Chief Kowalski constitutes a relevant final policymaker. *See Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) (collecting cases) (noting that the Fifth Circuit has found repeatedly that "Texas police chiefs are final policymakers for their municipalities, and it has often not been a disputed issue in the cases"); *see generally Taylor v. Hartley*, 488 F. Supp. 3d 517, 538 (S.D. Tex. 2020) ("It has long been recognized in Texas that the county sheriff is a county's final policymaker as to law enforcement.").

Plaintiff argues that Chief Kowalski's "ratification of [Defendant] Boothe's unconstitutional investigation and arrest amounts to an official policy" (Dkt. #74 at p. 23 (modified for readability)). Ratification, however, is not a straightforward or particularly simple legal theory to support. *See Peterson*, 588 F.3d at 848. While the Fifth Circuit has expressed that ratification may sometimes be deemed sufficient to create a municipal policy, it has also warned that "[i]t is

important to recognize that the ratification theory, *in whatever context it arises*, is necessarily cabined in several ways." *Milam v. City of San Antonio*, 113 F. App'x 622, 626–27 (5th Cir. 2004) (unpublished) (emphasis added). As applied to municipal liability, the theory of ratification is so limited as to prevent it "from becoming a theory of *respondeat superior*, which theory *Monell* does not countenance." *Id.* at 627. Ratification "requires that a policymaker knowingly approve a subordinate's actions and the improper basis for those actions. Otherwise, unless conduct is 'manifestly indefensible,' a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality." *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) (per curiam) (unpublished) (internal citations omitted).

Plaintiff argues that there exists a genuine issue of material fact regarding Chief Kowalski's ratification of his investigation and arrest by Boothe, and offers a variety of evidence in support of this proposition. Plaintiff first highlights Boothe's 2021 annual review, which included an excerpt by Chief Kowalski specifically recognizing Boothe's efficiency and persistence in identifying and arresting Plaintiff (Dkt. #76-2 at p. 1). Next, Plaintiff cites deposition testimony wherein Chief Kowalski noted his belief that Boothe's actions were made with professionalism and followed traditional directives (Dkt. #76-1 at p. 19). Plaintiff also references Chief Kowalski's belief, as pronounced in his deposition, that "we [were] in search of a suspect. We [had] the crime, the crime [had] been reported, and we [were] in search of the suspect" (Dkt. #74-8 at p. 16).

Prosper takes issue with Plaintiff's ratification theory, arguing that that Chief Kowalski was "in search of a suspect" because the Collin County District Attorney's Office had concluded and informed him that a crime had been committed, not because the police chief was personally

invested in Plaintiff's arrest (Dkt. #78 at p. 4; Dkt. #70-1 at p. 45). Prosper further argues that there is "nothing 'extreme' about what transpired regarding the Plaintiff's investigation, arrest, and eventual prosecution" and that summary judgment is proper on that ground (Dkt. #78 at p. 8).

Although "[t]he precise standard by which to plead a ratification theory is somewhat unclear as discussed and applied in other Fifth Circuit precedent," the Court notes that it "is bound by the Fifth Circuit, which has consistently held that the ratification theory applies only to 'extreme factual scenarios.'" *Taylor*, 488 F. Supp. 3d at 537; *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 796 (S.D. Tex. 2013); *see World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) ("[U]nless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom."). To contextualize and further define a sufficiently "extreme factual scenario," the Court turns to two Fifth Circuit opinions addressing a familiar issue.

The first relevant case is *Davidson*, 848 F.3d at 384. There, two officers arrested a protestor without probable cause in violation of the protestor's First and Fourth Amendment rights. *Id.* at 393. Afterwards, the police chief investigated the two officers' unconstitutional conduct and determined that they had not committed any violation warranting discipline. *Id.* at 395. The Fifth Circuit found that the police chief's investigation of the two officers did not support a ratification theory because the arrest "was not sufficiently extreme to qualify for a finding of ratification" and that it "thus [could not] support an allegation of ratification resulting in an official policy on part of the City." *Id.* at 396. The Fifth Circuit similarly affirmed a district court's decision to grant summary judgment against a plaintiff's *Monell* claim based on ratification in *Peterson*. 588 F.3d at

852. There, a police chief declined to discipline two officers for their unconstitutional use of force and failure to file a report. *Id.* at 848. In defense of his claim, the plaintiff raised deposition testimony indicating that the police chief testified that "both officers complied with the City's policies and procedures." *Id.* at 848 n.2. Over a single dissent, the Fifth Circuit found that "this evidence, viewed in the light most favorable to [the plaintiff], is insufficient to create a fact issue regarding the City's policymaker's ratification of unconstitutional conduct," as "precedent has limited the theory of ratification to 'extreme factual situations.'" *Id.* at 848 n.2, 848.

While "[l]imited guidance exists as to the definition of a sufficiently extreme factual scenario," the Court finds that Plaintiff has not raised sufficient evidence to support the "extreme" nature of the facts presented. *Hobart*, 916 F. Supp. 2d at 796. Here, the evidence suggests that Chief Kowalski was "told there was a crime" and that he personally emailed individuals employed by Prosper to "ensure that everyone is aware of the insidious nature of [Plaintiff] and his efforts to continue to avoid detection" (Dkt. #70-1 at p. 45; Dkt. #74-37). Chief Kowalski consequently ordered Boothe to investigate Plaintiff as a suspect of that crime (Dkt. #70-1 at p. 45). Boothe received confirmation from the District Attorney's Office that a crime had occurred, obtained multiple warrants, and submitted the results of his investigation to the relevant prosecuting agency (Dkt. #76-1 at p. 8). Boothe and six other officers ultimately arrested Plaintiff at his home and conducted multiple searches of his person and effects (Dkt. #1 at p. 18). Plaintiff was subsequently booked into the Collin County Jail and released that same day (Dkt. #1 at p. 18).

The facts underlying Plaintiff's arrest are not particularly extreme—what primarily sets this case apart from *Davidson* and *Peterson* is Chief Kowalski's early involvement in the investigation and his advisory statements (including references to Plaintiff's "felonious acts")

made prior to Plaintiff's arrest (Dkt. #74-35 at p. 2). However, these distinctions, even considered alongside Plaintiff's more general factual allegations, do not rise to the level of the elusive "extreme factual situation" presented in Fifth Circuit precedent to impose ratification liability on Prosper. *Compare Grandstaff v. City of Borger*, 767 F.2d 161, 168–70 (5th Cir. 1985) (finding ratification where officers "poured" gunfire into a truck, killing an innocent occupant), *with Snyder v. Trepagnier*, 142 F.3d 791, 798–801 (5th Cir. 1998) (finding no ratification where an officer shot a fleeing suspect in the back).

Moreover, Chief Kowalski's pre-arrest warnings and subsequent approval of the manner in which Boothe conducted the investigation and arrest, without more, cannot carry Plaintiff's ratification theory through summary judgment, as "good faith statements made while defending complaints of constitutional violations by municipal employees do not demonstrate ratification." *Davidson*, 848 F.3d at 395. Nor are Boothe's actions in arresting Plaintiff enough to establish "an obvious violation of clearly established law," as the mere absence of probable cause for an arrest has historically fallen short of supporting a "sufficiently extreme" ratifiable subordinate action. *World Wide*, 591 F.3d at 755; *see, e.g.*, *Davidson*, 848 F.3d at 396; *Peterson*, 588 F.3d at 848.

On these facts, and under the Fifth Circuit's recognition that "ratification is 'seldom, if ever, found by this court,'" the Court holds that Plaintiff has not carried his burden as to this fundamental requirement and has not identified ratification as a theory that might properly go before the jury. *Peterson*, 588 F.3d at 848 n.2; *see also York v. Welch*, No. 20-40580, 2024 WL 775179, at *6 (5th Cir. Feb. 26, 2024) ("Whether a case presents an extreme factual situation . . . such that a theory of ratification applies is a question of law.") As a result, ratification will not be applied to "overcome the general prohibition against holding a municipality liable for acts of its officials as set

forth in *Monell*," and Prosper is entitled to summary judgment on this issue. *Skyy v. City of Arlington*, 712 F. App'x 396, 397 (5th Cir. 2017) (per curiam) (unpublished).

**C. Moving Force**

The third *Monell* factor relates to the notion that "[m]unicipal liability inures only when the execution of a local government's policy or custom causes the injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). "The moving force analysis requires that rigorous standards of culpability and causation . . . be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Smith v. Carruth*, No. 15-4570, 2017 WL 785345 at *7 (E.D. La. Mar. 1, 2017) (citation modified) (quoting *Brown*, 520 U.S. at 405). Under this factor, "a plaintiff must show either that the policy itself was unconstitutional or that it was adopted with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow." *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022) (citation modified).

**1. Town Council's Investigation of Plaintiff**

Plaintiff argues that the Town Council's *Monell* "policy" of investigating Plaintiff was unconstitutional or made with deliberate indifference. Even assuming that Plaintiff was successful in "rais[ing] a fact dispute over whether an official policy or custom existed," the Court finds that Plaintiff has not produced enough summary judgment evidence to support a fact issue regarding the Town Council's moving force culpability. *Moore v. LaSalle Mgmt. Co.*, L.L.C., 41 F.4th 493, 509 (5th Cir. 2022)

As previously indicated, Plaintiff's constitutional violations related to Prosper are tethered to his arrest, not his investigation. *See Supra* II.A–B. In this context, and under the facts presented, the Court declines to hold that the Town Council's act of initiating an investigation into Plaintiff was unconstitutional on its face. *Villarreal v. City of Laredo*, 17 F.4th 532, 542 n.1 (5th Cir. 2021)

(holding "this circuit does not recognize" a retaliatory-investigation claim), *cert. granted, judgment vacated on other grounds sub nom. Villarreal v. Alaniz*, 145 S. Ct. 368 (2024); *McKinney v. Sharp*, No. 25-00080-SDD-RLB, 2026 WL 868598, at *6 (M.D. La. Mar. 30, 2026) ("It is one thing to subject a citizen to 'public criticism, an investigation (or attempted investigation), and false accusations'—which the Fifth Circuit has determined are not substantial enough 'injuries' to chill a person of ordinary firmness." (quoting *Colson*, 174 F.3d at 512)).

Because Plaintiff has not identified facts to support a direct unconstitutional "policy," he must raise facts to support the notion that the Town Council's decision to investigate Plaintiff was made with deliberate indifference to the known or obvious fact that his constitutional rights would be violated. Thus, Plaintiff is expected to present a "rare circumstance[]" in which the "extremely narrow" single decision exception constitutes a moving force of Plaintiff's injury. *Liggins*, 52 F.4th at 955. To warrant application, "the constitutional harm in question must've been the 'plainly obvious' consequence of the actor's single decision. In practice, that means the decision must've been made despite a very 'high degree of *predictability* concerning the consequences of the challenged decision.' That's a 'stringent standard' which requires 'unmistakable culpability and clearly connected causation.'" *Id.* (internal citations omitted) (quoting *Brown v. Bryan County*, 219 F.3d 450, 460–62 (5th Cir. 2000)). In applying this standard, the Fifth Circuit has repeatedly "stressed that a single incident is usually insufficient to demonstrate deliberate indifference," and the Court cannot spy an exception to this general rule under the facts presented. *Est. of Davis v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005).

First, Plaintiff has not cemented his arrest, nor any chilling of his rights under the First Amendment, as the "highly predictable consequence" of the Town Council's decision. Again, an

analysis of the chain of causation indicates that three independent decisions and a total of nine months separate the decision to begin investigating Plaintiff and the ultimate decision to arrest him. Given the involvement of multiple actors and the exceptional length of the relevant chain of causation, the decision to investigate an individual for utilizing a pseudonym in TPIA requests, even under the knowledge that the individual was doing so at least partially to protect his identity, does not rise to the level of deliberate indifference towards the suppression of Plaintiff's rights under the First or Fourth Amendment. On this record, the Court is left with no facts with which to sufficiently support Plaintiff's interpretation that his constitutional harm was the "plainly obvious" consequence of the Town Council's single decision to investigate Plaintiff. *Liggins*, 52 F.4th at 955. Consider the Fifth Circuit's decision in *Webb*, for instance. 925 F.3d at 219–20. Just as the single decision by a town mayor to "begin undertaking efforts to collect on [a] judgment" against a city employee did not constitute the "moving force" behind the employee's ultimate injury, so too does the Town Council's single decision to begin undertaking efforts to investigate Plaintiff fall short of constituting the "moving force" behind Plaintiff's ultimate constitutional injury here. *Id.*

Second, Plaintiff has not provided sufficient evidence to show that the Town Council possessed the requisite degree of culpability regarding the violation of his constitutional rights, or that the Town Council otherwise "completely disregarded any risk to [Plaintiff's] Fourth [or First] Amendment rights." *Liggins*, 52 F.4th at 956. Importantly, Plaintiff has not provided any evidence to support the Town Council's direct involvement in the day-to-day management or ultimate outcome of the investigation into Plaintiff. The Town Council also did not publicly reprimand Plaintiff or take other immediate, personal action against him once his identity was revealed. At

worst, the evidence presented suggests that the Town Council made a "poor decision" and was grossly negligent in initiating the relevant investigation. *Id.* at 957. But "'deliberate indifference' goes beyond mere or gross negligence." *Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020) (per curiam) (unpublished). As a result, Defendant is entitled to summary judgment on this issue.

**2. Chief Kowalski's Ratification**

"[T]he Fifth Circuit has not relaxed the causation requirement of *Monell* in the ratification context. Indeed, the Fifth Circuit appears to continue to require that an official policy be the moving force for the constitutional violation even in the context of ratification." *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *26 (N.D. Tex. May 25, 2017) (internal citation omitted) (first citing *Camacho v. City of El Paso*, No. EP-15-CV-00318-PRM-RFC, 2016 WL 3519662, at *13 (W.D. Tex. June 22, 2016); and then *Milam*, 113 F. App'x at 628), *report and recommendation adopted*, No. 1:16-CV-181-C, 2017 WL 3034317 (N.D. Tex. July 17, 2017). It is under this precedent that Plaintiff argues that "Chief Kowalski's ratification . . . was made with at least deliberate indifference" (Dkt. #74 at p. 32 (citation modified for readability)).

For this analysis, the Court assumes *arguendo* that Plaintiff has produced sufficient evidence to support ratification and addresses Plaintiff's contention with reference to its prior Memorandum Opinion and Order. There, this Court recognized that, in the context of Plaintiff's claim against Chief Kowalski as an individual defendant, "Plaintiff has not alleged sufficient facts for the Court to reasonably infer that [Chief] Kowalski acted with deliberate indifference" towards Plaintiff's constitutional rights (Dkt. #35 at p. 14). It went on to note that "even construing Plaintiff's factual allegations in the most favorable light, [Chief] Kowalski's order and ratification of Plaintiff's investigation may, at worst, have been grossly negligent, but controlling caselaw

explicitly rejects that mental state as deliberately indifferent" (Dkt. #35 at p. 14). Because the "deliberate indifference" standard is shared between both supervisor liability and *Monell* liability in this context, the Court's previous finding suggests that Chief Kowalski's involvement in the investigation cannot satisfy the requisite causation element. *See Est. of Davis*, 406 F.3d at 381 n.25 (noting that the Fifth Circuit has adopted the "standard of municipal liability—that is, requiring at least deliberate indifference—for supervisory liability"). While the Court noted the "inherent difficulty of proving deliberate indifference at the [12(b)(6)] stage," the Court declines to change course under Plaintiff's current factual presentation (Dkt. #35 at 14 n.7).

Crucial to the Court's decision is the state of Plaintiff's summary judgment evidence, which falls far short of sufficiently supporting Chief Kowalski's deliberate indifference. Neither Chief Kowalski's statements in Boothe's annual report nor his emails to Town employees are sufficient to indicate a "conscious choice to endanger constitutional rights." *Id.* at 383. The facts presented, including Chief Kowalski's email to Town employees asking them to "assist" in the investigation by making efforts "to identify this individual, should any documents have to be released," grounds the police chief's investigation in his belief that Plaintiff had committed the crime of impersonation. For instance, Chief Kowalski would initially inform Boothe, the individual conducting the investigation, "I don't know what we got going on here, please look into it" (Dkt. #74-8 at 3). The police chief testified that he was not frequently involved in the investigation, and received updates "[w]hen there was like a milestone that occurred during the investigation . . . . Milestones included things like the meeting with the district attorney's office [when] they felt like . . . we had probable cause for impersonating a public servant" (Dkt. #74-8 at pp. 6–7). Chief Kowalski's testimony also indicates that he was not involved in the day-to-day

operation of the investigation, that he did not give his opinion on how to proceed with the investigation, and that he did not even go so far as to discuss the arrest warrant with Boothe (Dkt. #70 at p. 6). Plaintiff's summary judgment evidence indicates that Chief Kowalski's actions were arguably "inept, erroneous . . . or negligent," but these mental states "do not amount to deliberate indifference" regarding the conclusion of the investigation and the resulting alleged violation of Plaintiff's First or Fourth Amendment constitutional rights. *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 463 (M.D. La. 2022). As a result, the Court finds that Plaintiff has not identified facts sufficient to bring the question of Chief Kowalski's ratification of a "policy" to a jury, and that Prosper is therefore entitled to summary judgment on this issue.

## III. Plaintiff's 14th Amendment Claim

In its Motion, Prosper fails to directly reference Plaintiff's Fourteenth Amendment Claim, yet argues that "Plaintiff does not have a viable and cannot prove any *Monell* claim" (Dkt. 70 at p. 2). Therefore, the Court will address Plaintiff's Fourteenth Amendment Claim against the Town. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) ("Rule 56(a) contemplates a filed motion, but a district court may grant summary judgment without a motion provided the party opposed has notice."); *Evanston Ins. Co. v. Kinsale Ins. Co.*, No. 7:17-CV-327, 2018 WL 4103031, at *12 (S.D. Tex. July 12, 2018) (ruling on claims that were not expressly raised, as "[a]lthough neither party directly addressed these claims, Defendant's motion for summary judgment urges the Court to dismiss all of Plaintiff's claims.").

"A claim under the Fourteenth Amendment can proceed under substantive due process or procedural due process." *Tarmo v. Noseff*, No. 4:25-CV-109, 2026 WL 788827, at *21 (E.D. Tex. Mar. 20, 2026) (citing *Steward v. City of New Orleans*, 537 F. App'x 552, 556 (5th Cir. 2013) (per curiam) (unpublished)). Plaintiff's complaint vaguely identifies a "depriv[ation]" of his "rights

guaranteed by the First, Fourth and Fourteenth Amendments" which entitle him to "actual and compensatory damages against Defendant Town of Prosper under 42 U.S.C. § 1983 in an amount to be proven at trial" (Dkt. #1 at p. 29).

Plaintiff cannot recover under a substantive due process theory, as a "resort to a generalized remedy under the Due Process Clause is inappropriate where a more specific constitutional provision provides the rights at issue." *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020). "In those situations, the specific provision, 'not the more generalized notion of 'substantive due process,' better guides analysis of plaintiff's claims.'" *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). As the allegations of Plaintiff's Fourteenth Amendment claim are coextensive with his First and Fourth Amendment claims, he cannot bring a generalized claim under the Fourteenth Amendment.

Plaintiff's allegations also preclude his recovery on a procedural due process theory, as his complaint lists his Fourteenth Amendment claim as "a direct and proximate cause of the actions of Defendant Town of Prosper's unconstitutional official policy" (Dkt. #1 at p. 29). Because Plaintiff's evidentiary showing was insufficient to identify an unconstitutional *Monell* policy or ratification sufficient to carry a *Monell* claim, his Fourteenth Amendment claim is rightly dismissed by Prosper's summary judgment challenge.

**IV. Declaratory Relief**

The Court finds that Plaintiff's declaratory judgment claim is duplicative of his *Monell* theory and thus not legally viable under the circumstances. "The Declaratory Judgment Act is remedial only." *Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). "A party's legal interest must relate to an actual 'claim arising under federal law that another asserts against him . . . .'" *Id.* (quoting *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173,

1179 (5th Cir. 1984)). Because the claims against Prosper will be dismissed under the terms of this Memorandum Opinion and Order, Prosper is entitled to summary judgment against Plaintiff on his request for declaratory relief.

## V. Discovery

Plaintiff asks that, in the event the Court sees fit to grant Prosper's Motion, the Court permit him additional time for discovery under Rule 56(d). "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

While "[s]uch motions are broadly favored and should be liberally granted," Plaintiff is expected to make two showings. *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)). First, he must "demonstrate how additional discovery will create a genuine issue of material fact." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017). Second, he must establish that he has "diligently pursued discovery." *Id.*

In support of his request, Plaintiff has attached a signed declaration alleging that the expected discovery would assist it in highlighting the "evidence of a genuine issue of material fact regarding (i) a decision that was officially promulgated and ratified by the municipal policymakers and (ii) that the decision was the moving force behind the violation" (Dkt. #74 at pp. 34–35). Plaintiff argues that a recent production of documents (along with the absence of a privilege log) indicates that "there is more discovery the Town is improperly withholding," and claims that now is the proper time to "reopen the depositions of the fact witnesses regarding the issues implicated in this new and late production" (Dkt. #74 at p. 35). The Court cannot arrive at a similar conclusion.

Plaintiff first served requests for production on Prosper on October 2, 2025 (Dkt. #75 at p. 2). Throughout the discovery period, Plaintiff received "thousands of pages of documents, emails, and body camera videos" (Dkt. #78 at p. 9). Plaintiff objected to certain responses to his request for production on December 9, 2025, but was satisfied with Prosper's correspondence on January 15, 2026 indicating that the Town had produced all records in its possession pertaining to the challenged responses (Dkt. #75 at pp. 4–5). Nevertheless, Plaintiff alleges he discovered new information pertaining to the way the Town had conducted searches for documents on March 10, 2026 during the deposition of a witness (Dkt. #75 at p. 7). As a result of that deposition, Plaintiff adopted the belief that the Town had not, in his view, utilized sufficient terms in its search for documents. As a result, Plaintiff requested that the Town conduct a new search using different terms on March 11, 2026 (Dkt. #75 at p. 8). Prosper agreed, but warned Plaintiff that "documents likely would not be ready by Friday, March 13, 2026, as requested" (Dkt. #75 at p. 9). On that date, Prosper informed Plaintiff that the search had yielded thousands of email chains (Dkt. #75 at p. 9). It was from this search that Plaintiff received 1,200 pages of discovery on March 17, 2026, one day before his response was due. Although this trove of discovery was arguably related to Plaintiff's initial request for production, it appears to largely be the result of an entirely new discovery request made on March 11, 2026—less than a week prior to the filing of Plaintiff's response (Dkt. #78 at p. 10). From these facts, the Court believes that Plaintiff has had "ample prior opportunity" to conduct discovery to form the factual basis of his *Monell* claims. *Zavala v. Harris County*, No. 22-20611, 2023 WL 8058711, at *2 (5th Cir. Nov. 21, 2023) ("To the extent that Zavala argues these claims should be maintained because she has yet to obtain discovery, the district court determined

correctly that she had ample prior opportunity to do so. Thus, we agree with the district court that Zavala failed to state a *Monell* claim against the County.").

Additionally, counsel for both parties appeared before the Court to argue a similar discovery concern on April 6, 2026. At that conference, Plaintiff claimed that Prosper's recent production of new documents necessitated a modification to the closed discovery deadline and the re-deposing of four witnesses, including Chief Kowalski. Notably, however, Plaintiff did not point to a specific email or reference any other fact tending to support the requests for re-deposition, and Prosper claimed that Plaintiff was made aware of the search parameters as late as December 2025. The Court ultimately denied Plaintiff's request, finding that the proposed re-depositions were unnecessary and that the case should continue forward as planned. Currently, the Final Pretrial Conference is set for November 6, 2026, with jury selection and trial set to begin on Monday, November 16, 2026 (Dkt. #106). Plaintiff's request for further discovery at most has only highlighted his preference to seek "needed, but unspecified, facts," and has not identified why specific discovery is likely to create a genuine issue of material fact regarding the issues which have rendered summary judgment appropriate in this case. *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999).

## CONCLUSION

It is therefore **ORDERED** that Defendant Town of Prosper's Motion for Summary Judgment (the "Motion") (Dkt. #70) is hereby **GRANTED**.

It is further **ORDERED** that all claims against Defendant Town of Prosper are hereby **DISMISSED** with prejudice.

It is further **ORDERED** Defendant Town of Prosper is hereby **DISMISSED**.

**IT IS SO ORDERED.**

**SIGNED this 14th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE